## ·SUPREME COURT.

### John W. Bates agt. Enoch H. Rosekrans.

*It seems,* that the old common law rule prevails in regard to matters of substance in a pleading: that the pleading is to be construed most strongly *against the pleader.*

Where, in an action on contract, the answer is susceptible of being construed to contain two defences, one of *payment,* and the other requiring an *account*—one requiring a *reply,* and the other not, the answer should be construed as setting up only the defence of *payment,* and not considered as containing a *counter-claim* requiring a reply.

Especially should this construction be given to the answer, where all the alleged counter-claims are liable to the objection that they are not apparently set up as such, but are set up by way of *defence,* and do not *claim affirmative relief.*

The taking by the plaintiff of a *note* of the defendant alone, is not in law a satisfaction of a note of the defendant and a third person, held by the plaintiff, unless *expressly agreed to be taken in absolute payment.*

*Albany General Term, December,* 1861.

Gould, Hogeboom and Peckham, *Justices.*

Appeal from judgment at the circuit.

This action was brought upon a joint and several promissory note, dated September 11th, 1851, for the payment of the sum of $2,553.71, with interest, on the first day of February, 1852, made by the defendant and one Andrew

Bigham, payable to the order of, and indorsed by Bates & Griffin.

The action was tried at a circuit court held in Rensselaer county, on the 27th day of December, 1860, before Hon. R. W. PECKHAM, and a jury.

On the trial, and before any evidence was given, the defendant's counsel made a motion for judgment upon the pleadings, upon the ground that the plaintiff had not replied to the counter-claims of the defendant contained in the answer, or either of them.

The court overruled the motion, and the defendant's counsel excepted.

The plaintiff's counsel then introduced in evidence and read said note, and proved that the interest thereon to the day of the trial was $1,661.47, making due on the note for principal and interest $4,215.18.

The plaintiff then rested.

The defendant's counsel then renewed his motion for judgment, and also moved that the complaint be dismissed, upon the ground above stated.

The court overruled the motions, and each of them. To each of which rulings the defendant's counsel excepted.

The defendant's counsel then requested to go to the jury on the question of payment, and upon each and every other issue of fact presented by the evidence.

The court declined this request, and the defendant's counsel excepted.

The court then directed the jury to find a verdict for the plaintiff for the amount of the note as proved.

To which direction the defendant's counsel excepted, and requested the court to submit the cause to the jury.

The jury thereupon, under the direction of the court, found a verdict for the plaintiff for the sum of four thousand two hundred and fifteen dollars and eighteen cents.

Judgment having been entered on the verdict, the defendant appealed to the general term.

John B. Gale, *for plaintiff, respondent.*
W. A. Beach, *for defendant, appellant.*

By the court, Hogeboom, Justice.   The defendant, upon the trial, made two objections to the plaintiff's recovery :

1. That the answer contained counter-claims, to which there was no reply, and therefore that the defendant was entitled to judgment.

2. That the pleadings in connection with the plaintiff's admission, as sworn to in his first verified complaint, showed that the demand prosecuted had been paid.

I. As to the alleged counter-claims.   They are alleged to be contained in the 4th and 5th answers.

(1.) The fourth answer in substance alleges that after the maturity of the note prosecuted, and while the plaintiff was the holder thereof, Bigham, one of the joint and several makers of said note, assigned all his estate to the plaintiff for the benefit of creditors, and preferred him as to all demands against said Bigham, including the note in question, and that plaintiff accepted and received said assignment *in full satisfaction and discharge of said note;* that the assigned estate was of greater value than the amount of plaintiff's demands against said Bigham, including said note ; that plaintiff disposed of a portion of said estate to *pay and satisfy* all said demands, including the note in question, and still retains in his hands and has converted to his use a sufficient part of said assigned estate to pay and satisfy same ; that defendant was a *surety* of said Bigham on said note, which was known to plaintiff at the time of the assignment, and that said assignment was made and received with a view of discharging defendant from said note, and without defendant's knowledge, and in consideration thereof plaintiff agreed to *discharge* Bigham from said note.

The defendant claims that this answer presents a counter-claim entitling him to the following affirmative relief, viz :

1. To demand the *surrender* and *cancellation* of the note as *paid.*

2. To demand from the plaintiff, as trustee, an *account* of the fund and an *appropriation* of it to the payment of the note.

3. To demand a *specific performance* of the contract between Bigham and plaintiff.

4. To demand that upon payment of plaintiff's claim, defendant be *subrogated* to all the rights and securities of the plaintiff against Bigham.

5. To demand that the plaintiff first resort to the fund in his hands for the payment of the note, and an *injunction* restraining the collection of the note of defendant.

6. To demand that the assigned assets be *marshaled* so as to pay this debt and protect defendant.

Assuming for the present that this answer might enable defendant to claim these various remedies or modes of relief, it is also obvious that the answer substantially sets up the defence of *payment and satisfaction* of the note :

1. By accepting an assignment of property sufficient for that purpose, for the express object and upon the express understanding so to apply it.

2. By receiving a fund dedicated to such a purpose, disposing of a part expressly for that purpose, and converting to his own use a sufficient portion of the residue to effect that object.

3. By receiving the assignment thus made with the view of discharging defendant from the note, and without defendant's knowledge agreeing to discharge Bigham therefrom.

Here, then, in the view most favorable to defendant, was an answer susceptible of being construed to contain two defences—one of *payment,* the other requiring an *account ;* the one requiring a reply, and the other not, in order to form an issue thereon. In which way was it to be construed ?

1. I still think, notwithstanding some judicial intimations to the contrary, that the old common law rule prevails in regard to matters of substance, to construe the pleading most strongly against the pleader, and hence that the plaintiff might well conclude that the answer was designed to set up only the defence of payment. (*Burrall agt. DeGroot, 5 Duer, 379.*)

2. I think all the alleged counter-claims are liable to the objection that they are not *apparently* set up as such; that they are set up by way of *defence;* that they do not claim *affirmative relief;* and hence are not to be presumed to have desired it. I do not coincide in the view that in all cases *nothing* but a statement of facts is to be incorporated in a pleading. A *complaint* is often unintelligible without a statement of the relief asked; and sometimes it is *equivocal* upon its statement of facts, whether it is in contract or in tort, and the fact is determined by the nature of the relief sought.

So also an *answer* may be equally equivocal, or susceptible of a two-fold construction. It may be uncertain whether it intends to set up a simple *defence* or a *counter-claim,* that is, an affirmative cause of action; whether it merely aims to *defeat* the plaintiff's claim, or to obtain *affirmative* relief against the plaintiff. This must, I think, in general be determined by the fact whether it seeks this affirmative relief or not, upon the face of the answer in express terms. Take one of the illustrations presented· by the defendant's answer and argument. It is said upon such an answer, the defendant might claim to have the note as being paid, delivered up and cancelled. This is so with some qualification. But by parity of reasoning, *every* defence of *payment* to a note might be similarly construed, as equally entitling the defendant to such affirmative relief. But in the absence of any allegations in the answer that the plaintiff *sought* to use it in an illegal or inequitable way; in the absence of allegations that it had not reached maturity, or

that the party was *threatening* to dispose of it; in the absence of any expressed wish in the answer to have it *surrendered* and *cancelled,* or the plaintiff *enjoined* from *assigning* it; would not any court conclude that the defence of *payment* was all that the party intended to rely upon, and that a judgment to that effect would insure to him ample protection? So also in an action of ejectment the defendant may interpose a legal or an equitable defence, and the equitable matter may either be set up simply for the purposes of a defence, or for the purpose of obtaining affirmative relief. This was at first doubted, (*Dewey* agt. *Hoag,* 15 *Barb.,* 365,) but it is no longer an open question. (*Crary* agt. *Goodman,* 2 *Kern.,* 266 ; *Dobson* agt. *Pearce,* 2 *Kern.,* 156 ; *Philips* agt. *Gorham,* 17 *N. Y. R.,* 275.) Now in such a case, how is the plaintiff to know whether the matter set up in the answer is intended merely to defeat the plaintiff's recovery, or to obtain affirmative relief? for example : a conveyance of the legal title founded upon the equitable right, unless if the latter is desired, a prayer or demand for such relief be incorporated in the answer. Inasmuch as a counter-claim is in effect a new cause of action by the defendant against the plaintiff, (*Mayor of New York* agt. *Parker Vein Steam Ship Co.,* 21 *How.,* 291 ; *McKenzie* agt. *Farrell,* 4 *Bosw.,* 202 ; *Gleason* agt. *More,* 2 *Duer,* 642 ; *Xenia Branch Bank* agt. *Lee,* 7 *Abb.,* 376,) it seems quite as proper that it should define the nature of the relief sought, as that a complaint should name the judgment asked for. And the more so, as the answer in this case sets up the matter contained therein expressly by way of *defence*—the words being " for a further defence"— and not apparently by way of counter-claim; no *cross-demand* being named as *such* in terms or in substance in any way, nor any affirmative relief sought.

Under these circumstances I cannot doubt that the pleader intended the matters thus interposed, to be set up

merely as a *defence*, and that the judge at the circuit was right in giving that construction to it.

(2.) The matters set up in the 5th answer are subject to similar criticism.   That answer is in substance that the note arose out of the partnership transactions of Bigham and Rosekrans, and was given to the plaintiff, to his knowledge, for the benefit of the partnership ; that afterwards Bigham assigned to the plaintiff all his interest in the partnership and the property and estate thereof, and in consideration thereof the plaintiff, then being the holder of said note, agreed with Bigham to pay Bigham's share of the partnership debts, and any balance due from him to the partnership, *and to cancel said note;* that said Bigham's share of the debts of the partnership, and also the balance owing by him to the partnership, were each greater than the amount of said note ; that the plaintiff has received under said partnership, and holds, property of said partnership of greater value than the amount of said note, but has not paid any part of the partnership debts, and refuses to apply the partnership property to such payment.

On this state of facts the defendant claims that he is entitled to various kinds of equitable relief :

1. To an *account* of the partnership property, and the application of his interest in it against the note.

2. To a judgment that the note is *merged* and should be *cancelled.*

3. To a *specific performance* of the plaintiff's agreement to cancel the note.

4. To a decree declaring that the plaintiff is *subrogated* to Bigham's rights and answerable to his obligations, and carrying out the results of that doctrine in the decree itself.

It must be conceded that this answer approaches nearer to the idea of a counter-claim, or cross-demand, because it contains various averments of facts, upon which a prayer for equitable relief might well be founded ; but the objection remains that no such relief is sought in express terms

or by necessary implication, and that the matters are set up only by way of *defence*—the language of the answer being, " and the defendant for a further *defence* avers," &c., and are, upon a reasonable construction of the answer, susceptible of that interpretation. It is in substance an allegation that the plaintiff, in consideration of the assignment to him of Bigham's share of the partnership property, by which he received more than the amount of the note, agreed to pay Bigham's share of the partnership debts and to *cancel said note*, then held by him. This *agreement* to cancel, if made, as it appears to be, upon sufficient consideration, was as between the parties an actual cancellation or extinguishment of the note, and may be so treated. This is substantially the defence of *payment or satisfaction.* Moreover, the defendant in his argument claims that the effect of the averments in the answer is to place the plaintiff in the shoes of *Bigham*—in the position substantially of a joint maker of the note with the defendant, and thereby to *merge* the note in the new relations of the parties—to preclude an action upon it by the plaintiff, and to turn him over to his remedy, if any he has, under the partnership relations of the parties. This is in effect the defence of *merger* or *extinguishment*, and requires no reply to put it in issue.

Susceptible as this answer is of this construction; finding in it no express allegations of counter-claim, or prayer for affirmative relief, but on the contrary an allegation that the matters are insisted on by way of *defence;* finding also in the Code (§ 149) a distinction observed between a *defence* and a *counter-claim*, I feel bound to presume that the matters were intended by way of *defence only.* The language of the Code on this point is : " The answer of the defendant must contain, 1. A denial, &c. 2. A statement of any new matter constituting a defence *or* counter-claim." (*Code*, § 149.) So also, " the defendant may set forth by answer as many defences *and* counter-claims as he may

have." (*Code*, § 150.) So also, " the plaintiff may demur to one or more of such defences or counter-claims." (*Code*, § 153.)

II. It is further claimed that by the evidence in the case it was established that the principal of the note in suit, executed by both Bingham and Rosekrans, was paid by a subsequent note executed by the defendant alone to the same payees, on the 14th of January, 1852, for the same principal sum, which was indorsed by the payees and received by the plaintiff in payment. The proof relied on for this purpose was the introduction in evidence of the plaintiff's first amended complaint in this action, (not the one forming a part of the issue on the trial,) verified by the oath of the plaintiff, in which the plaintiff alleged that at about the maturity of the note in suit, of September 11, 1851, the defendant, in consideration thereof, and " to provide for the payment of the principal of the same," executed and delivered to the plaintiff another note of a similar amount (of principal,) dated January 4, 1852, and payable at a future day, to the order of Bates & Griffin, and by them, before maturity, indorsed to the plaintiff.

I think this did not amount to a *payment.*

1. The allegation is, that the note of 1852 was given to *provide* for the payment of the note of 1851 ; by which I understand the pleader to mean, not a *present* payment, but a provision for *future* payment, by the giving of the note, and to have the effect of an actual payment if paid at maturity. This future payment was not made, the allegation being that both notes are *unpaid.* Nor was the defendant prejudiced by the plaintiff retaining both notes, as the last note was surrendered by the plaintiff to the defendant at the trial—the defendant receiving the same with the declaration that he did not thereby avoid or waive the defence of payment.

2. Nor was it a payment in law or in legal effect. The taking of the note of the defendant alone was not in law a

satisfaction of a joint and several note of the defendant *and* a third person; certainly not, unless expressly agreed to be taken in absolute payment. No benefit accrues to the plaintiff thereby, and no new consideration intervenes. The point is settled upon authority. (*Cole* agt. *Sackett*, 1 *Hill*, 516; *Waydell* agt. *Luer*, 5 *Hill*, 448; *Elwood* agt. *Diefendorf*, 5 *Barb.*, 398–408; *Van Eps* agt. *Dillaye*, 6 *Barb.*, 244; *Hawley* agt. *Foote*, 19 *Wend.*, 516; *Frisbie* agt. *Larned*, 21 *Wend.*, 450–452.) Some of the cases go so far as to hold that such a note is not payment, *though expressly agreed* to be received as such. (*Cole* agt. *Sackett*, 1 *Hill*, 516; *Waydell* agt. *Luer*, 5 *Hill*, 448; *Elwood* agt. *Diefendorf*, 5 *Barb.*, 398–408.)

There was no error in the disposition of this cause at the circuit, and the judgment of that court must be affirmed.