YOUNG v. SCHOFIELD, *Appellant.*

Division Two, March 3, 1896.

1. **Innocent Purchaser.** An innocent purchaser is one who purchases in good faith, without notice, and for a valuable consideration, and where any of these elements are lacking one is not an innocent purchaser.

2. ——: PLEADING. The claim of being an innocent purchaser is, in an answer, an affirmative defense, and in a petition occupies a similar affirmative attitude, and the elements necessary to constitute one an innocent purchaser must be appropriately amplified in the pleading.

3. ———: ———: CLOUD ON TITLE: CANCELLATION OF DEED. A petition in a suit to cancel, as a cloud on title, a sheriff's deed, which, after stating the source of title and describing the land, alleges that plaintiff, on the —— day of ————, 1892, in good faith and for full value, purchased the land of the vendor who on the same day executed and delivered a deed to plaintiff, who paid the vendor the purchase money and immediately placed said deed on record in the recorder's office and took possession, and ever since has been and now is the owner in fee in possession, fails to state facts sufficient to show that plaintiff was an innocent purchaser.

4. **Pleading**: ANSWER: REPLY: CLOUD ON TITLE: CANCELLATION OF DEED. Where an answer in a suit to cancel a sheriff's deed upon the ground that it is a cloud on title sets up new matter, a reply is insufficient which "denies each and every allegation and statement therein which is and are in any way inconsistent with the allegations in the petition" and-"especially denies all new matter pleaded" in the answer. Revised Statutes, 1889, secs. 2049, 2052.

5. ———: PROOF: INNOCENT PURCHASER. An averment or defense of being an innocent purchaser is an affirmative allegation and must be affirmatively proved, and there was failure of proof where the only evidence offered was a stipulation that at the date of the purchase of the land in suit by plaintiff from a judgment debtor he had no personal notice of the issue or levy of an alias execution upon it.

6. **Lien**: LEVY UPON LAND: NOTICE. The effect of a levy upon land is to create a lien upon it with notice thereof to everyone (R. S. 1889, sec. 4922), and one who afterward buys takes subject to the subsequent enforcement of the levy and lien to which it has already been subjected, and sale under the levy relates to the date of the latter and destroys all titles and transfers made subsequent to it.

7. **Execution**: SALE: NOTICE. Notice in writing should be given a defendant in an execution of a sale thereunder, as required by section 4943, Revised Statutes, 1889, where the execution was issued to and sale made in a county other than that in which defendant resided or judgment was rendered.

8. ———: ———: ———: IRREGULARITY. Failure to give the execution defendant notice in writing of the execution sale of his land, as required by Revised Statutes, 1889, section 4943, is a mere irregularity which does not render the sale void, and can only be taken advantage of by the execution defendant.

9. ———: LEVY ON PERSONAL PROPERTY: SATISFACTION. While a levy on sufficient personal property is an apparent satisfaction of the debt which the writ represents, such *prima facie* satisfaction may be rebutted by showing that there was no real satisfaction, as that the property had been restored to the possession of the owner, or that the levy was, through no fault of the plaintiff, nonproductive, or that the property was not subject to levy or execution.

10. ——: ——: ——. The levy of an execution on and sale of personal property in possession of defendant, which has been mortgaged by him, and which was soon afterward sold to satisfy the mortgage, are nugatory and constitute no satisfaction of the judgment debt.

11. **Partial Payment:** SATISFACTION OF DEBT. A part payment of a debt is ordinarily no satisfaction of the residue.

*Appeal from Marion Circuit Court.*—HON. REUBEN F. ROY, Judge.

REVERSED.

THE plaintiff, a brother of John C. Young, seeks by this equitable proceeding to have canceled a sheriff's deed made to defendant Schofield, November 18, 1892, for certain land in Marion county, the judgment under which the sale occurred having been rendered in Knox county, June 12, 1889, for the sum of $232.63, in favor of Schofield and against John C. Young, who resided in Lewis county. Execution issued on this judgment July 1, 1892, and was levied on the land in controversy in Marion county on the eighteenth of that month. Pending the lien on, and sale under, the execution which found its consummation in the deed which plaintiff seeks to cancel, John C. Young made a deed to his brother, Thos. A. Young, the plaintiff.

After some preliminary remarks, showing from whom the title to the land was derived and giving a description of it, the petition herein states: "That this plaintiff afterward, to wit, on the——day of——A. D. 1892, in good faith and for full value, purchased said John C. Young's undivided one eighth in the aforesaid described land, inherited as aforesaid; and that said John C. Young executed and delivered his deed therefor to plaintiff on said day; and plaintiff paid said John C. Young the purchase money for said land, and immediately placed said deed on record in

the recorder's office in said Marion county, Missouri, and took possession of said premises, and ever since has been and is now the owner in fee in possession thereof."

The petition then, after reciting some of the matters above set forth, states that "on December 27, 1889, execution was issued on the judgment aforesaid, and levied on certain personal property of the defendant therein, John C. Young, subject, however, to a chattel mortgage executed by said Young to one Sheckles, as well as on a certain other personal property of said Young; that defendant bid in the property, which was knocked down to him, and amounted to the sum of $200; that by reason of said sale, a dispute arose between John C. Young and the then plaintiff, now defendant Schofield; that defendant, Robert F. Schofield, afterward, to wit, on the——day of June, A. D. 1892, more than three years after the rendition of said judgment aforesaid, and when said judgment lien had expired, still exercising and claiming ownership thereof, promised and agreed—in writing—with said John C. Young, that if he (John C. Young) would pay him the sum of $50 on or before August 1, 1892, he would take and receive the same in full satisfaction and payment, and would release said John C. Young from his entire indebtedness and deliver the same to him canceled; which said proposition the said John C. Young accepted, and agreed to pay said sum in full payment and satisfaction as aforesaid.

"Plaintiff further states that in pursuance of said written contract and agreement said John C. Young did, afterward, to wit, on the first day of August, A. D. 1892, at and in the city of Edina, in Knox county, Missouri, comply therewith, and did then and there pay to said defendant herein said sum of $50 as aforesaid promised and agreed upon; which said sum of

$50 defendant herein kept and used. And so plaintiff says that said indebtedness was then and there fully satisfied and paid.

"That defendant Schofield, afterward, on July 18, 1892, caused an *alias* execution to be issued on said judgment, with intent to injure and defraud John C. Young, and to be levied on the real estate in question, and the same to be sold November 18, 1892, as the property of John C. Young, and bid in the same and received a deed therefor, and put the same to record, and that said apparent conveyance is a cloud on plaintiff's title; that said deed was made without any consideration deemed valuable in law, for the reason that the judgment before the day of sale had been satisfied." Then follows a prayer for cancellation, etc.

A marginal amendment was made to the petition to the effect that the land sold was in a different county to that of defendant Young's residence, and he was not notified, etc.

. The answer admits the judgment against John C. Young in the circuit court of Knox county for $232.63, and that execution was issued thereon and sent to the sheriff of Lewis county, and levy there made as stated in the petition. Admits that an *alias* execution was issued on said judgment and sent to the sheriff of Marion county, under and by virtue of which the land in question was sold and deed made to defendant. Denies each other allegation in the petition. That all the mortgaged property levied upon under said execution was, after said sale, restored to John C. Young, and that he and the plaintiff are estopped from claiming that John C. Young was entitled to any other credits than those given by the sheriff's return aforesaid; that the amount remaining due after said sale, from the judgment debtor John C. Young, was $236.35, and of this amount there was not, in fact, and could not be in

law, any dispute, disagreement, doubt, or uncertainty. That John C. Young paid him $50 on said judgment, August 1, 1892, but denies that he agreed to or did receive that sum in satisfaction of said judgment. That he notified John C. Young long prior to the first day of August, 1892, that he would not accept said $50 in satisfaction of said debt. That after payment of said $50 there still remained unpaid on said judgment the sum of $246.75. That said *alias* execution was levied upon the lands in controversy prior to the execution of the deed from John C. Young to plaintiff, and notice of such levy recorded, etc.; that plaintiff's pretended purchase was not made in good faith, but was intended to be made, and was made, in fraud of defendant's rights and for the purpose of casting a cloud upon the title to said lands under said execution sale. Then follows a prayer for cancellation of deed to plaintiff, and for possession of the land in litigation.

For reply to the answer, plaintiff "denies each and every allegation and statement therein, which is or are in any way inconsistent with the allegations in the petition contained. And plaintiff especially denies all new matter pleaded in said answer of defendant." The reply then proceeds to reiterate, in substance, the allegations of the petition, and winds up by declaring that the payment of the $50 was an accord and satisfaction of the indebtedness owing at the time such payment was made.

This is a sufficient description of the pleadings. The facts as disclosed in evidence are noticed, so far as necessary, in the following opinion.

*L. F. Cottey* for appellant.

(1) Defendant's objections should have been sustained, to the introduction of any oral testimony,

tending to impeach or explain the return of the sheriff
of Lewis county.   That return is regular upon its face
and is conclusive, until it is amended, or impeached
by action of the party injured, for falsity.   It can not
be attacked in a proceeding of this kind.   *Hallonell v.
Page*, 24 Mo. 593; *Delinger v. Higgins*, 26 Mo. 180;
*McDonald v. Lewright*, 31 Mo. 29; *Reeves v. Reeves*,
33 Mo. 28; *Stewart v. Stringer*, 41 Mo. 404; *Jeffries
v. Wright*, 51 Mo. 219; *Deggendorf v. Bartholow*, 69
Mo. 194; *Bank v. Suman*, 79 Mo. 532; *Heath v. Rail-
road*, 83 Mo. 623; *Decker v. Armstrong*, 87 Mo. 319;
*Ayres v. Duprey*, 27 Tex. 598; *Flaniken v. Neal*, 67
Tex. 631; *Clough v. Monroe*, 34 N. H. 389; *Huntress
v. Tiney*, 39 Me. 241; *Hotchkiss v. Hunt*, 56 Me. 254;
*Sykes v. Keating*, 118 Mass. 520; *Egery v. Buchanan*,
5 Cal. 56; *Martin v. Barney*, 20 Ala. 372; *Rowell v.
Klein*, 44 Ind. 292; Murfree on Sheriffs, sec. 868, and
cases cited.   (2) The facts are that the mortgaged
property levied upon by the sheriff of Lewis county
was at the sale abandoned by the officer, and the plain-
tiff in the execution; left in the debtor's possession
and restored to him.   The law is, that where personal
property levied upon sufficient to satisfy the execu-
tion, has been restored to the owner, there is no satis-
faction of the execution.   And so where the chattels
levied upon are abandoned and left in the debtor's
possession, no satisfaction of the judgment can be
presumed to ensue.   This, upon the just principle,
that the execution defendant has sustained no loss.
Black   on   Judgments,   sec.   1008;   Freeman   on
Judgments, sec. 475;   Herman on Executions, sec.
176; *Williams v. Boyce*, 11 Mo. 538; *Blackburn v.
Jackson*, 26 Mo. 310; *Thomas v. Cleveland*, 33 Mo.
127; *Colvin v. Six*, 80 Mo. 64; *Warrensburg v.
Simpson*, 22 Mo. App. 699; *Weber v. Cummings*, 39
Mo. App. 522; *In matter of King*, 21 Am. Dec. 335; *Tarp-*

*nall v. Richardson*, 13 Ark. 550; *Chandler v. Higgins*, 109 Ill. 608; *People v. Hopson*, 1 Denio (N. Y.), 578; *Peck v. Tiffany*, 2 N. Y. (Comstock) 456; *Bank v. Rogers*, 15 Minn. 386; *Hanness v. Bonnell*, 23 N. J. Law, 164; *Sasseer v. Walker*, 5 G. & J. (Md.) 109; *Dilling v. Foster*, 21 S. C. 338; *Wright v. Young*, 6 Oregon, 90; *Cornelius v. Burford*, 28 Tex. 206; *Williams v. Bowden*, 1 Swan (Tenn.), 285; *United States v. Dashiel*, 3 Wall. 699. (3) The law is, that the payment in money of a part of an undisputed debt, which is due, is not a good satisfaction of the entire debt, even if accepted in full satisfaction; unless there is a new consideration. *Riley v. Kershaw*, 52 Mo. 226; *Brewery Co. v. Schoenlau*, 32 Mo. App. 360; *Deutmann v. Kilpatrick*, 46 Mo. App. 629; *Maack v. Schneider*, 51 Mo. App. 101; *Floerke v. Distilling Co.*, 20 Mo. App. 78; *Wheeler v. Wheeler*, 11 Vt. 66; *Fitch v. Sutton*, 5 East, 230; *Curtis v. Martin*, 20 Ill. 577; *Gassett v. Andover*, 21 Vt. 351; *Pennel's Case*, 3 Co. 238.

*O. C. Clay* and *H. J. Drummond* for respondent.

(1) Thomas A. Young, plaintiff and respondent, was neither party nor privy to the execution sale of the personal property in Lewis county January 10, 1890. He had no interest whatever in the personal property sold on January 10, 1890. He did not know anything about it. He was a stranger to this whole proceeding and could not be bound by it. Greenleaf, Evidence, secs. 523, 535; Story, Eq., sec. 165. Thomas A. Young was not a privy of John C. Young at the time of the purchase by him of the interest of John C. Young in the real estate. *Henry v. Woods*, 77 Mo. 277; *McDonald v. Matney*, 82 Mo. 358. Appellant bought the mortgaged property subject to the mortgage. And the finding of the court therefrom that

appellant bought this mortgaged property at the sale was not error. Matters of fact admitted by the pleadings require no proof; they are not in issue between the parties. R. S. 1889, sec. 2119; McQuillin's Pleading and Practice, sec. 72. (2) The return does not show how much of the mortgaged property appellant purchased. But appellant in his testimony in chief and on cross-examination supplies what the return omits, and shows both that he was present at the sale and directed that the mortgaged property be sold and that he purchased $156 worth thereof. He will not be allowed to complain of the court's finding from his own testimony that he bought $156 of the mortgage property. *Loomis v. Railroad*, 17 Mo. App. 340; *Rhorer v. Brockhage*, 15 Mo. App. 16; *State v. Lett*, 85 Mo. 52; *White v. Mfg. Co.*, 53 Mo. App. 337; *Harper v. Morse*, 114 Mo. 317; *Bielman v. Railroad*, 50 Mo. App. 152. The property was not abandoned by the sheriff or appellant—he bought it knowing it was mortgaged and by his direction. Rodefer turned the horses out on the farm, and they remained there until the mortgagee, Mrs. Sheckles, through her attorney, B. F. Thompson, took possession of them and put them in possession and charge of John C. Young until they were sold to satisfy the mortgage debt. There was no error in the finding of the court here. It is supported by the evidence and should stand. *Peacock v. Nelson*, 50 Mo. 256; *Turner v. Gibbs*, 50 Mo. 556; *McCartney v. Ins. Co.*, 45 Mo. App. 373. (3) The court did not err in its finding as to the amount of the debt remaining due. (4) An offer by letter and unconditional acceptance thereof constitutes a contract. *Statesburg v. Messengale*, 13 Mo. App. 221. The contract in this case was complete. Townsend's Compendium of Commercial Law, pp. 21–26; *Lungstrauss v. Ins. Co.*, 48 Mo. 201; *Lancaster v. Elliot*, 42 Mo. App. 503.

(5) On August 1, 1892, when Young paid Schofield the $50, the debt was extinguished and the judgment was satisfied, upon which the execution then in the hands of the sheriff of Marion county was bottomed and it could not be enforced by R. F. Schofield, appellant, who was the execution debtor and purchaser thereunder. He got no title at the execution sale November 18, 1892. The execution was *functus officio*. A sale under a satisfied judgment is an absolute nullity and a purchaser gets no title. *Durette v. Briggs*, 47 Mo. 356; *Weston v. Clark*, 37 Mo. 568; *McClure v. Logan*, 59 Mo. 235; *Huff v. Morton*, 83 Mo. 402. The compromise of a doubtful or disputed debt is a good consideration. *Reiley v. Chouquette*, 18 Mo. 220; *Rhinehart v. Bills*, 82 Mo. 534; 1 Par. Cont. 438 [6 Ed.], sec. 4; *Helling v. Order of Honor*, 29 Mo. App. 309. (6) When Young sent Schofield the $50 on August 1, 1892, and expressly told him it was to pay off this indebtedness, Schofield had to either accept or refuse to accept the money. He had no right to accept and keep the money and then prescribe the terms of his acceptance. He should have refused the tender or returned the money to Young. If Schofield had not agreed to this, in law he should have promptly returned the money. This is the way he should have spoken and not having so spoken then, he is precluded from speaking now. The law will not allow a party to play fast and loose in this way. *Adams v. Helm*, 55 Mo. 469; *Lee v. Dodd*, 20 Mo. App. 272; *Reisenleiter v. Kirche*, 29 Mo. App. 291; *Deutmann v. Kilpatrick*, 46 Mo. App. 624; *Perkins v. Headley*, 49 Mo. App. 556; *Maack v. Schneider*, 51 Mo. App. 92.

SHERWOOD, J.—1. As already seen, the pleadings in this case do not set forth with sufficient fullness and accuracy what should have been stated.

Take, for instance, the first portion of the petition. The plaintiff would seem by that attempt to assume the role of "innocent purchaser," but his averments are by no means sufficient to that end. In order for a party to occupy such an attitude as above said, he must be one who is "a *bona fide* purchaser for a valuable consideration without notice." 1 Story, Eq. Jur. [13 Ed.], pp. 63, 387, 417, 436, 438; 2 *Ib.* 825.

This quotation from the authorities readily shows that *these* essential elements compose the *tout ensemble* of such a person as plaintiff evidently desired to describe himself as being: *First*, he must be a purchaser in "good faith;" *second*, "without notice;" and *third*, for a *"valuable consideration."*. Lacking any of these ingredients, a person is not a *bona fide* purchaser within the meaning of the books. *Insurance Co. v. Smith*, 117 Mo. *loc. cit.* 293.

This claim of "innocent purchaser" is in an answer an affirmative defense, and in a petition occupies a similar affirmative attitude, the party pleading it must "come into a court of equity with absolutely clean hands." 2 Pomeroy, Eq. Jur. [2 Ed.], sec. 762. And not only must the affirmative claim or affirmative plea contain the elements aforesaid, but those elements must be appropriately amplified; thus:

"In *Frost v. Beekman*, 1 Johns. Ch. 288, Chancellor KENT says: 'If a purchaser wishes to rest his claim on the fact of being an innocent *bona fide* purchaser, he must deny notice, though it be not charged; he must deny fully and in the most precise terms every circumstance from which notice could be inferred.' See, also, *Halsa v. Halsa*, 8 Mo. 303, and *Sillyman v. King*, 36 Iowa, 208, and cases cited." *Holdsworth v. Shannon*, 113 Mo. 508.

Guided by these authorities, it is at once obvious that the passage quoted from plaintiff's petition lacks

much of meeting the requirements of those authorities, saying nothing of the omission to state *when* the purchase was made.

The reply is also bad in its beginning, as heretofore set forth.

Our statute, section 2049, Revised Statutes, 1889, requires that an answer shall contain: "*First*, a general or specific denial of each material allegation of the petition controverted by the defendant, or any knowledge or information thereof sufficient to form a belief; *second*, a statement of any new matter, etc." Similar language is employed in section 2052, *Ib.*, relative to what a reply shall contain; so that both these pleadings must be governed in their framing by cognate rules.

It is scarcely necessary to say that this portion of the reply is insufficient as a denial, because it is impossible to tell *what* allegation in the answer is "inconsistent with the allegations in the petition contained," and it is equally difficult to tell what plaintiff *means* when he says he "especially denies all *new matter* in said answer of defendant." Under such denials as these, both court and adversary are left in the dark as to *what* plaintiff intends to deny by those portions of his reply.

The provisions of our code of civil procedure in regard to the liberal construction of pleadings, section 2074, Revised Statutes, 1889, and as to what an answer shall contain, section 2049, *Ib.*, are substantially identical with sections 519 and 500, Wait's New York Code Civil Procedure, 1877. And it has been ruled in that state that section 519 in relation to liberal construction of pleadings with the view to substantial justice between the parties, extends only to "*matters of form*" and does not "apply to the fundamental requirements" of a good pleading, RUGER, C. J., remarking: "A construction of doubtful or uncertain allegations in a pleading,

which enables a party by thus pleading to throw upon his adversary the hazard of correctly interpreting their meaning, is no more allowable now than formerly; and when a pleading is susceptible of two meanings, that shall be taken which is most unfavorable to the pleader. (*Bates v. Rosekrans*, 23 How. Pr. 98.) It is in the nature of things that a party who is required to frame his issues for the information of his adversary and the court, must be responsible for any failure to express his meaning clearly and unmistakably. While it is competent for a party to move to make the pleadings of his adversary more definite and certain, yet, inasmuch as it is the primary duty of the party pleading to present a clear and unequivocal statement of his allegations, the *onus* of having them made so can not be cast upon his adversary by his own fault in failing to perform his duty." *Clark v. Dillon*, 97 N. Y. 370.

Such pleadings have been denounced as *"vicious"* in *Long v. Long*, 79 Mo. 644, PHILIPS, C., observing: "The object of pleading, especially under our code, is to form specific and definite issues of fact. When the answer, as in this case, tenders many issues of fact in different counts, affecting the integrity of plaintiff's title relied on as the basis of his recovery, he ought to answer all the allegations, either by denying or admitting them." To the like effect see *Snyder v. Free*, 114 Mo. *loc. cit.* 367.

2. When this case came on for hearing, the following agreement was filed: "It is agreed that at the date of the purchase by the plaintiff of the land in question from his brother that he had no personal notice of the issue or levy of the *alias* execution upon the land in question. It is further agreed that after that and prior to the sale of the land in question under said execution and levy that the plaintiff and his brother John C. Young, both had knowledge of the

levy of said execution upon said lands; but that no notice in writing was caused to be served by the plaintiff in said execution upon the defendant, John C. Young, in said execution, at least twenty days before the sale or at any other time."

As to the first clause of the stipulation just quoted, it is almost needless to observe that even if the petition on the point of plaintiff's being an "innocent purchaser" had been sufficient, such evidence as the first clause of the stipulation contains would have been wholly inadequate to support it, and this was all in the nature of evidence offered on that point. Inasmuch as the averment or defense of being an "innocent purchaser" is an *affirmative* allegation or plea, so must the evidence offered in its support be of the like nature; as the allegation must be *affirmatively pleaded*, so also must it *affirmatively be proven;* the *onus* lies on the *pleader*. *Holdsworth v. Shannon*, 113 Mo. *loc. cit.* 525; *Jewett v. Palmer*, 7 Johns. Ch. 65; *Conn. Mut. Ins. Co. v. Smith*, 117 Mo. *loc. cit.* 294.

So that neither upon the pleadings nor upon the evidence in this case can plaintiff be regarded as a purchaser without notice within the meaning of the authorities.

3. But in the circumstances disclosed by this record, it is wholly immaterial whether the plaintiff was an innocent purchaser or not in the accustomed sense of that term, and for these reasons: The levy of the execution on the land in Marion county was properly made July 18, 1892, and on the same day, notice of such levy filed with the recorder of deeds, etc. The effect of this levy, etc., was to create a lien on the litigated land, and give notice thereof to every one. R. S. 1889, sec. 4922. And as plaintiff bought the land and received a deed therefor on the thirtieth of July, 1892, he took subject to the subsequent enforce-

ment of the levy and the lien to which the land had already been subjected; and when that lien was enforced and consummated by the sale under execution, that sale had relation to the date of the levy, and swept out of existence all subsequently created titles and transfers. *Meier v. Meier*, 105 Mo. *loc. cit.* 428; *Huff v. Morton*, 94 Mo. *loc. cit.* 410; 2 Freeman, Executions [2 Ed.], sec. 333, and cas. cit.; 1 *Ibid.*, secs. 195, 58.

So that for the additional reasons in this paragraph mentioned, defendant must be regarded as the holder of the better as well as the legal title to the land in controversy. This remark, however, must be taken as subject to the questions whether the judgment had been fully satisfied prior to the levy of the execution aforesaid on the land, and as to the effect to be given to the failure to notify John C. Young of the issuance of the execution as required by section 4943, Revised Statutes, 1889. Of these topics in their inverse order.

4. And first as to the failure of Schofield to notify John C. Young, the defendant therein, of the issuance of the execution to Marion county, a county in which he did not reside. Was this failure fatal to the validity of the sale?

The provisions of section 4943 have been discussed on several occasions in this state, the first instance being when a plaintiff, a resident of St. Louis county, sought to set aside a sheriff's deed made to Murphy, the land being situate in Franklin county, the sale being made under a special *fieri facias*, the result of a judgment of foreclosure of a mortgage, the defendant having been *personally* served with process. The fact that such was the manner of service is apparent from the provisions of the statute, the same at that time as now, to the effect that if a mortgagor has been duly summoned, or appears to the action, the judgment if for plaintiff shall be for the recovery of the debt, etc.,

and that if the mortgaged property be not sufficient, etc., then the residue to be levied of other goods, etc., lands, etc. (R. S. 1889, sec. 7087), and from the remarks of Judge LEONARD, who, after stating that the sale had been made under a special *fieri facias*, and that the object of the statute requiring notice to a defendant in an execution, was to prevent creditors from sending their executions to distant counties, on errands of speculation and then selling and buying the land of a debtor without competition and for a nominal sum, held that though the language of the statute was general in its words, *"all execution sales,"* yet that considering the reason of its enactment as aforesaid, it did not apply to a case of the sort under consideration, because, as he remarked, "the *defendant* in this execution knew, for such was the general law, that this land must be sold under this judgment before any other property could be touched by it, and that the sale could take place only in the county of Franklin. The material fact, then, required by the legislature to be communicated to the debtor, in what county the creditor elected to subject his debtor's land to execution, was already known to him, and therefore there is no reason for our considering such a case as falling within the requirements of the statute." *Hobein v. Murphy*, 20 Mo. *loc. cit.* 449.

The next case arising was that of *Ray v. Stobbs*, 28 Mo. 35. There personal service was had on the defendant and judgment rendered before a justice of the peace of DeKalb county, where both parties resided, and a transcript filed in the DeKalb circuit court, and from thence an execution issued to Andrew county, and the defendant not being notified, it was held that on timely application by the defendant, the sale which occurred should have been set aside.

Next followed the case of *Harris v. Chouteau*, 37

Mo. 165, where the parties plaintiff and defendant all resided in Jackson county. Plaintiff sued defendants, had personal service on defendants, and they appeared and defended the action which resulted in judgment against the defendants. After process was served on defendants, one of them removed to Ste. Genevieve county. Subsequent to this, execution was issued in the county of the judgment's rendition, and levied upon land of the removed defendant, and it was afterward sold, etc., but no notification was had upon her, and it was held she was entitled to none, WAGNER, J., observing: "If the judgment creditor is so disposed he may issue his execution to a remote county, have the land of his debtor levied on and sold, and possibly buy it in at a great sacrifice, if the owner is not notified so that he can be there and protect his rights. It was to prevent this unconscionable advantage from being taken that the law was enacted. But where a party is brought into court by *personal* service, and judgment taken against him, and execution issued to the sheriff of the same county in which the judgment is had, he is certainly fully notified of all the proceedings."

So, too, in *Buchanan v. Atchison*, 39 Mo. 503, the defendant was sued, personal service had, and judgment obtained against him, and afterward he removed to another county, and his land in the county in which judgment was rendered was sold, and it was held for reasons similar to those already given, he was entitled to no notice.

Likewise, in *Harper v. Hopper*, 42 Mo. 124, a similar ruling as heretofore mentioned was made where a defendant was resident of a county other than that in which the action was brought, but *he appeared to the action* and made defense, and this was held tantamount to personal service, WAGNER, J., after citing the two cases already noted in 37 and 39 Mo., saying: "There

is nothing in the present case to distinguish it from those referred to. Although the defendant did not reside in Polk county when the judgment was taken, yet he appeared and defended the suit. The execution was issued to the sheriff of that county, and the land levied on and sold was situated in the same county. He then had sufficient notice that an execution would issue to that county, and he can not bring himself within the mischief intended to be remedied by the law in reference to executions.''

These cases established beyond question the rule that the strict letter of the statute, section 4943, is so far expanded by construction as to embrace all cases where a defendant being *personally served* with process in a county where he resides and has land, or personally served, etc., in a county where he has land, or, being sued in a county other than that of his residence, he appears to and defends the action, having land in such county, that, in all such instances that section as to notice does not apply. This is the *utmost limit* to which the letter of the law guided by its reason has been extended by this court in the cases already cited.

This *resume* of former cases leads to that of *Lohmann v. Stocke*, 94 Mo. 672. There, Stocke lived in St. Louis; he had land in Morgan county. Judgment was rendered against Stocke in the city of his residence, and also in Morgan county for costs, presumably upon proper service, and execution awarded to that county and the land of Stocke situated in that county was sold, without any notice being given him. But this court held that inasmuch as he *had land in the county* where the *judgment was rendered*, therefore, he was not entitled to notice. Of course this ruling is not in accord with our prior decisions and is an entire misapprehension of them, because it utterly

ignores their true intent, spirit, and meaning, whereby personal service or a defense made to the action in the county where the defendant has lands, is the legal equivalent of, and substitute for, the "*notice in writing*," which, in other circumstances, the statute imperatively requires.

That case was correctly decided on *its facts*, as shown by the files therein, for there a judgment for costs was rendered against Stocke while he was in Morgan county, and of course this fact brought that case within the principle heretofore announced in our early cases. The only trouble about the *Lohmann-Stocke* case is that the language of the opinion does not put it on the correct ground, to wit, that of *personal service* in the county where the land afterward sold lay.

5. But granting that the failure to notify John C. Young of the issuance of the execution to Marion county was a noncompliance with the statute, as it undoubtedly was, was it such a failure as amounted to anything more than an *irregularity*? We are of opinion that it was not, and in this we do but follow frequent rulings as to the usual notice not being given of ordinary sheriff's sales. *Draper v. Bryson*, 17 Mo. 71; *Curd v. Lackland*, 49 Mo. 451. See, also, *Harness v. Cravens*, 126 Mo. 260.

6. Taking it, then, as true, that the failure to notify John C. Young is a mere irregularity, such irregularity can only be taken advantage of by the defendant in the execution *himself; not* by another. This is the rule announced in respect of notices of ordinary sales under executions, and the like reasoning fits the case at bar. 2 Freeman, Executions [2 Ed.], sec. 286, and cas. cit. It is unnecessary to say what would be the proper ruling on this point did plaintiff

occupy the position of creditor to defendant, John C. Young.

7. This brings us down to the question whether the judgment was satisfied prior to the execution sale of the land which constitutes the core of this litigation. This subject readily divides into two branches, the first of which is in regard to the effect of the sale, or rather attempted execution sale of the personal property in Lewis county.

The rule seems well settled that although a levy on sufficient personal property is a satisfaction *sub modo* of the debt which the writ represents, yet that such *prima facie* or apparent satisfaction may be rebutted in a variety of ways, so as to show that there was no real satisfaction, as *ex. gr.:* that the property has been restored to the possession of the owner, as in the case at bar, the levy being abandoned, or that the levy was, through no fault of the plaintiff, nonproductive, or the property not subject to levy nor execution. Herman, Executions, pp. 255, 256, and cas. cit.; 2 Freeman, Executions [2 Ed.], secs. 269, 271, 445, and citations.

Now, at common law the equitable interest of a debtor in chattels was not the subject of sale under execution. Our statute, section 4915, while it subjects equitable interests in *lands* to sale, lets the common law as to equitable interests in chattels or personal property remain as it was. In consequence of the existence of this principle, no title or interest passed to the plaintiff in the execution, which was levied on the personal property in Lewis county, because the defendant was the mortgagor of that property in possession, and it was soon afterward sold to satisfy the mortgage debt. *King v. Bailey*, 8 Mo. 332; *Yeldell v. Stemmons*, 15 Mo. 443; *Sexton v. Monks*, 16 Mo. 156; *Boyce's*

*Adm'r v. Smith's Adm'r*, 16 Mo. 317; *Foster v. Potter*, 37 Mo. *loc. cit.* 529.

In such circumstances as these, the attempted levy of the writ on an interest in property nonseizable and nonsalable under execution amounted to nothing and plaintiff had the right, on discovering this, to abandon the supposed levy; treat it as a nullity and let the property return to the possession of the mortgagor. Freeman, Executions, sec. 271.

8. This being the case, the execution can not be regarded as satisfied, as outside of the mortgaged property only a small sum was realized. And inasmuch as this is the result of that sale, it becomes wholly unnecessary to discuss the effect of the payment of the $50 in alleged satisfaction of the balance due on the judgment, as a sufficient sum existed to support the sale. But were it necessary to do so, it is sufficient to say that it is the established law of this state that a part payment of a debt is ordinarily no satisfaction of the residue. *Price v. Cannon*, 3 Mo. 453; *Riley v. Kershaw*, 52 Mo. 224; *Willis v. Gammill*, 67 Mo. 730; *Tucker v. Bartle*, 85 Mo. 114. There is nothing in the circumstances of this case to take it out of the operation of the familiar rule.

9. Nothing has been said about the declarations of law asked by defendant, because this being a case in equity, such declarations are entirely out of place.

For the reasons heretofore given we reverse the decree entered for plaintiff, and a decree will be entered in this court in behalf of defendant Schofield, canceling the deed made by John C. Young to plaintiff. BURGESS, J., concurs. GANTT, P. J., dissents.

GANTT, P. J. (*dissenting*).—This is a suit in equity to set aside a sheriff's deed executed by the sheriff of Marion county to the defendant Schofield, whereby all

the right, title, and estate of John C. Young in and to certain lands in Marion county were conveyed to said defendant.   The decree divested the title and removed said deed as a cloud on the title of plaintiff who had previously bought said interest from his brother, John C. Young, the defendant in the execution.   These facts were developed:

On the twelfth day of June, 1889, the defendant, Robert F. Schofield, Henry Schultz, and Rufus Schofield obtained judgment in the circuit court of Knox county, Missouri, against John C. Young for $232.63. Defendant Robert F. Schofield afterward became the sole owner of this judgment.   On December 27, 1889, an execution was issued on this judgment, directed to and sent to the sheriff of Lewis county.   The sheriff of Lewis county at once levied upon four horses, two cultivators, two breaking plows, one self-binder, one corn planter, and check rower, one set of wagon harness, three brood sows, one top buggy and harness, one two horse wagon and harness, all the property of John C. Young, the defendant in the execution.   There was a chattel mortgage on this property in favor of Mrs. Almira Schrader or Sheckles, of date September 19, 1889, but the amount thereof is not stated nor the terms thereof, nor does it appear whether it was due when the execution was levied on it.   The property was duly advertised for sale by the sheriff on January 10, 1890, the sale to be made subject to the mortgage. In addition to the mortgaged property a lot of other personal property, consisting of hogs, harness, corn planters, sleigh and bells, one half interest in a wheat drill, plows, grindstones, chickens, bedstead, cooking utensils and cooking stove, pitchforks, shotgun, and iron kettle, which were not mortgaged, were levied upon and advertised for sale at the same day.

On the day of the sale the defendant herein, the

creditor in the execution, was present and directed the sale. The sheriff testified that he first offered the mortgaged stock for sale and Mr. Schofield, the owner of the judgment, bid $156 on mortgaged property and $25.60 on the other property. The sheriff's return of his proceedings at that sale is as follows:

"Received by me this twenty-seventh day of December, 1889. Executed the within writ in the county of Lewis and state of Missouri on the first day of December, 1890, by selling at public auction the personal property levied upon as set out in the levy hereto attached, some of said property being levied upon and sold subject to a prior lien or mortgage held by B. T. Thomson and purchased by plaintiff, but nothing received by me on sale of said mortgaged property.

"Total amount received by me on sale, $25.60. Amount of my fees, $15.88. Amount paid R. F. Schofield and credited on this execution, $9.72. I, therefore, return this execution not satisfied.

"L. W. SUMMERS,
"Sheriff Lewis Co., Mo."

There was evidence tending to prove that one Rodefer took charge of the stock after the levy and cared for it until the day of sale for the sheriff, and led the same out for sale under the directions of the execution creditor and the sheriff; that after it was sold it was delivered to Mr. Schofield, the judgment creditor. The defendant in his evidence admits that he directed the sale of the mortgaged property and bid on it to see whether they would sell for enough to pay the mortgage and leave anything over. He says the horses were left there on the place after the sale. There was evidence that Rodefer turned the horses in the lot by Schofield's direction without the assent of John C. Young. There was testimony that a dispute grew out

of the bids by Schofield on the property on the day of the sale. Young claimed that he was entitled to a credit for the amount of Schofield's bid.

In June, 1892, John C. Young wrote Schofield a letter referring to the dispute between them and offered to settle and compromise their differences by paying him $50 by August 1, 1892. This letter was not produced and read in evidence. In answer to this letter Schofield wrote the following letter to John C. Young:

"EDINA, Mo., June 16, 1892.

"*J. C. Young, Esq., Lewistown, Mo.*

"DEAR SIR:—Your letter was received several days ago. In looking up the matter I find that the sheriff of Lewis county has not returned the execution, and I can not tell just what amount was realized of property. You will remember that the sheriff only sold about $30 or $40 worth of property, for which he got the money; the balance being under mortgage and was not delivered. You would only be entitled to credit on the note for the net amount received by me, and this, if I remember correctly, was only $10 or $12. The amount of the note and interest to June 12, 1889, the date of the judgment, was $232.63. The whole amount to date is $310.61, less interest on the amount I received from sale of property, but if you will pay the $50 you offer on or before August 1, 1892, I will release you of the entire debt and deliver the note to you.

"Yours truly,

"R. F. SCHOFIELD.

"P. S.—Please let me know whether I can expect the $50 by August 1, or not.          R. F. S."

John C. Young testified that he answered this letter by return mail and told Mr. Schofield he would pay the $50 by August 1, 1892.

On June 23 Schofield again wrote John C. Young:

"EDINA, Mo., June 23, 1892.

"*J. C. Young, Esq., Lewistown, Mo.*

"DEAR SIR:—I have concluded that I will not accept the $50 as payment for the note I hold against you. I, therefore, withdraw the proposition made in my other letter.      Yours truly,

"R. F. SCHOFIELD."

On August 1 Young wrote Schofield:

"MONTICELLO, Mo., August 1, 1892.

"*R. F. Schofield, Esq., Edina, Mo.*

"DEAR SIR:—In accordance with your agreement of June 16, 1892, to release me of all indebtedness to you upon my paying you the sum of fifty dollars on or before August 1, 1892, I herein send you by the hands of James Arnold, Esq., the sum of fifty dollars in lawful money of the United States. Please to send me the proper release.      Yours truly,

"JOHN C. YOUNG.

"Per O. C. CLAY, his att'y."

Mr. Schofield received the $50 referred to in the letter, and on the next day wrote Young's attorney, Mr. O. C. Clay, as follows:

"EDINA, Mo., August 2, 1892.

"*O. C. Clay, Esq., Monticello, Mo.*

"DEAR SIR:—The $50 sent me by Mr. Arnold was handed me by him yesterday evening. I have credited Mr. Young with this amount paid on his note and you will advise Mr. Young that I shall enforce the payment of the balance.      Yours truly,

"R. F. SCHOFIELD."

On August 3, 1892, the following letter was mailed to defendant and appellant, viz.:

"MONTICELLO, Mo., Aug. 3, 1892.

"*R. F. Schofield, Esq., Edina, Mo.*

"DEAR SIR:—Your letter of August 2, received and noted. Mr. Young sent you the money for the

purpose expressed in his letter of August 1, 1892. He will insist upon your applying the $50 as directed in his said letter, and not otherwise. You can not otherwise apply it. Please to take notice that the money was sent to pay off Mr. Young's indebtedness to you in compliance with your agreement.

"Yours truly,

"O. C. CLAY, Att'y for J. C. Young."

The evidence shows that this money was kept by appellant and never returned to John C. Young, neither did he give him the release of the debt as he promised and agreed, and as he was directed to do.

John C. Young inherited the one eighth interest in the land described in the petition through the death of his father. Thomas A. Young, plaintiff and respondent herein, purchased John C. Young's said one eighth interest in said land on July 30, 1892, without personal or actual notice of the issue of levy of the execution.

On July 18, 1892, the sheriff of Marion county levied upon the land described in the petition by virtue of execution issued from Knox county, Missouri, and on November 18, 1892, sold the undivided interest of John C. Young therein and the execution creditor and appellant R. F. Schofield became the purchaser and took a deed therefor from said sheriff and held the same at the time of bringing this suit.

Upon the above facts plaintiff claimed the debt of John C. Young to Schofield was fully settled, and paid long before the sale, and that the deed bottomed on the execution sale thereon passed no title to defendant.

I.   From the foregoing statement it is evident that the essential fact presented for the consideration of this court is the sufficiency of the evidence tending to prove that the judgment rendered in favor of Robert F. Schofield, Henry Schultz, and Rufus Schofield in

the circuit court of Knox county, on June 12, 1889, against John C. Young had been satisfied prior to the issue of the execution thereon to the sheriff of Marion county, under which the lands of plaintiff were sold. If the judgment was in legal contemplation paid and discharged by the sale under execution in Lewis county and the subsequent compromise and payment of the balance agreed upon between John C. Young and Robert F. Schofield who had become the sole owner of said judgment after its rendition and prior to said alleged satisfaction thereof—then of course as Robert F. Schofield procured the execution to issue and the sale to be made and was himself the purchaser of the land in Marion county he acquired no title thereby, and the plaintiff was entitled to have the cloud created by the deed removed by the decree of the court.

The facts are not intricate or much involved. Robert F. Schofield sued out an execution on the judgment of June 12, 1889, in Knox county, directed to and placed it in the hands of the sheriff of Lewis county. He directed the sheriff to levy it upon certain personal property belonging to John C. Young upon which there was a chattel mortgage, and certain other property upon which there was no mortgage. He was present at the sale and directed the sheriff, who had in the meantime given notice of the sale and that he would sell the mortgage property subject to the mortgage, to first sell the mortgaged property, which the sheriff did, and Mr. Schofield bid $156 on the mortgage property and $25.60 on the property on which there was no mortgage, the whole sale aggregating $181.60.

It further appeared that a dispute arose between Mr. Schofield and Mr. Young in regard to the amount of credit Young was to receive on the execution; that afterward Young, referring to this dispute, offered Schofield $50 to be paid August 1, 1892, in full settlement

of their differences and that Schofield in writing accepted the offer and agreed to take the $50 in full satisfaction; that he afterward withdrew or attempted to withdraw his agreement to accept the $50 in full satisfaction; that on August 1, 1892, Young sent Schofield the $50 by James Arnold and asked for a receipt in pursuance of their agreement. Schofield accepted the money and wrote Mr. Clay, Young's attorney, the next day, that he had received it and advised Young he would enforce the payment of the balance. To this Clay replied Mr. Young would insist upon the $50 being applied as directed in his letter and not otherwise. The trial court found this was a satisfaction of the judgment.

As an essential predicate upon which to base the finding that the judgment was satisfied, the court found there was a dispute as to the balance due after the execution sale of the mortgaged property. The court had sufficient evidence upon which to base its findings that Young was insisting that he should be credited with Schofield's bid, and Schofield evidently insisting the bid on the mortgaged property should not be credited. We do not agree with the learned counsel for defendant that there was no dispute between the parties and therefore no consideration for the unequivocal promise in writing of defendant to accept the $50 in full of the balance he claimed. While it is true that the payment of a part of a debt is no satisfaction of the whole debt even when the creditor agrees to receive a part in payment of the whole, yet this rule has never been held to include the compromise of a doubtful claim asserted in good faith. Such a compromise faithfully carried out furnished a valuable consideration to support the promise to accept a smaller sum than the whole amount of the debt. 1 Parsons on Contracts

[7 Ed.], p. 438, sec. 4; *Riley v. Kershaw*, 52 Mo. 224; *Rinehart v. Bills*, 82 Mo. 534.

But it may be argued that John C. Young's interest in the mortgaged personalty was not subject to levy and sale and that the action of Mr. Schofield in directing a levy upon it and a sale thereof by the sheriff and his bids thereon were nugatory.

It will be observed that neither John C. Young, the mortgagor, nor Mrs. Sheckles, the mortgagee, claimed any exemption of this property. No one replevied it. No one made an adverse claim of it, and it was sold and bid off to Mr. Schofield by the sheriff and delivered to him. He knew it was mortgaged at the time and by his action induced the sheriff to make the sale and charge his commissions as and for a valid sale. He bid on the property with full knowledge that it was mortgaged. There is nothing to indicate that he was misled by anything said or done by John C. Young.

The evidence does not disclose when the mortgage debt was due. It may have been that by the terms of the mortgage John C. Young had the right to retain the mortgaged stock for a definite period. Can it be said under such circumstances Young could not in good faith have claimed that Schofield was bound by his bid and made it the basis of an honest contention for a credit on his debt? We think not. "When a right is disputed and a compromise ensues, that compromise will not be disturbed, should it turn out afterward that one of the parties had no right in law. Such a principle would overthrow all compromises." *Reilly v. Chouquette*, 18 Mo. 220, 226.

We hold in view of this evidence that there was a valuable consideration for the promise of Schofield to accept $50 on August 1, 1892. The offer made by Schofield and its unconditional acceptance by Young

constituted a binding contract which Schofield was not at liberty to rescind in writing a letter. *Falls Wire Mfg. Co. v. Broderick*, 12 Mo. App. 378.

John C. Young having agreed to pay Schofield $50 on August 1, 1892, he promptly sent that amount to Mr. Arnold, with a letter stating it was in compliance with their contract and requested a full acquittance. Schofield did not refuse to accept the $50 upon the terms it was tendered, but took it and next day notified Young's attorney he intended to insist on the balance. It was his duty to accept on the terms as made, or reject it. *Adams v. Helm*, 55 Mo. *loc. cit.* 471. Having accepted the $50 as he had bound himself to do, his subsequent letter did not change the character of his act. If I am right then Schofield was no longer a creditor of John C. Young and it was no concern of his whether John C. Young gave or sold his brother Thomas A. Young, the plaintiff, his land, and it becomes unnecessary to discuss the absence of a notice of the issuance of the execution to Marion county, or whether Thomas A. Young is a purchaser in good faith and for value and without notice.

II. I do not concur in overruling or discrediting *Lohmann v. Stocke*, 94 Mo. 672. Regarding the views expressed in paragraph 4 of the opinion relative to that case as in conflict with a long line of decisions in this court, I am compelled to dissent therefrom.

It has been so long ruled in this state that it was not necessary to give a defendant notice of the issuance of an execution in the county in which the judgment upon which it is based, was rendered, that a departure therefrom will in my opinion imperil the title to many tracts of land. It is true that the early decisions held that the language of the statute did not apply to executions issued to the county in which the judgment was rendered for the reason that where an

execution is issued to the county in which the judgment is rendered the defendant is presumed to be notified of all the proceedings; and it is true that Judge WAGNER in *Buchanan v. Atchison*, 39 Mo. 503, and *Harper v. Hopper*, 42 Mo. 124, alludes to the fact that *personal service and personal appearance had* been obtained in those suits, as *showing the defendant had sufficient notice that an execution would issue to that county*. But it is obvious, I think, that there can be no sound distinction made as to the presumption of notice of what *will be done* in the county in which it is obtained, under a judgment obtained by *personal* service any more than of what will be done under a judgment on publication. The judgment to be valid in either case must be based upon *sufficient notice* and when this is given there is no difference between the force and effect of a judgment rendered upon actual, as distinguished from constructive, service, in cases where constructive service is authorized by law. *Jones v. Driskill*, 94 Mo. 190; *Irvine v. Leyh*, 124 Mo. 361, 27 S. W. Rep. 512.

The reasoning of *Hobein v. Murphy*, 20 Mo. 447, is entirely satisfactory because in that case the law required the mortgaged property to be first sold before the execution could be levied on other property, and the defendant was bound to know that the sale could only take place in the county where the judgment was rendered. The same reasoning would apply to sales under judgments obtained upon orders of publication enforcing taxes and other liens as in such cases the sales are made in the county where the judgment is obtained, and can not be lawfully made elsewhere. See concurring opinion in *Harness v. Cravens*, 126 Mo. 260.

In *Lohmann v. Stocke*, 94 Mo. 672, it was held that the execution could be levied and the land sold in the

county where the judgment was obtained, without any reference to the character of the service. It is true that Stocke lived in St. Louis and several of the judgments under which the land was sold were obtained in that city, but it is also true, as stated by Judge NORTON in his opinion, that the sheriff's deed in that case recited *"that one of the judgments was obtained in Morgan county where the land was sold,"* thus bringing that case in line with its predecessors.

Whether any exception should have ever been made in any case as an original proposition may be doubted, but I regard the construction put upon the statute so firmly rooted in the law of this state that its disturbance would result in unsettling titles. I am of opinion, however, that this question does not arise properly on this record, but as it has been so fully discussed in the opinion I simply desire to give some reasons why I do not think the case of *Lohmann v. Stocke* ought to be overruled or criticised.