C. R. MONTGOMERY AND EMMA MONTGOMERY, APPELLANTS, v. W. A. CLEM, RESPONDENT.[*]

Kansas City Court of Appeals. April 5, 1926.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, p. 790, n. 10; section 828, p. 942, n. 26; Fraud, 26CJ, section 13, p. 1071, n. 11; section 110, p. 1218, n. 6; 27CJ, section 219, p. 78 n. 17; section 243, p. 94, n. 65; 27CJ, p. 30, n. 77; Pleading, 31Cyc, p. 197, n. 68.

*George E. Woodruff* and *Ruth C. Woodruff* for appellants.

*H. J. Bain* and *E. M. Harber* for respondent.

BLAND, J.—This is an action for damages for fraud and deceit. At the close of plaintiffs' testimony the court sustained defendant's demurrer to the evidence, resulting in a verdict and judgment in favor of defendant. Plaintiffs have appealed.

The petition alleges that plaintiffs, on the 20th day of May, 1920, were the owners of certain real estate in the City of Trenton; that defendant—

". . . being desirous of securing for himself the above-described, property of the plaintiffs, and knowing that plaintiffs were desirous of exchanging their property for one more suitable to their needs, offered to purchase the property of the plaintiffs and pay therefor the sum of $3050 which was $1350 more than the amount of the encumbrance on plaintiffs' property. This offer plaintiffs refused. Then the defendant promised and represented that he would purchase a piece of property for the purpose of trading to the plaintiffs and that he would fix its value in said proposed exchange at the actual cost of that property to him. That in pursuance of these promises, defendant W. A. Clem, purchased a lot or tract of land" consisting of 2.94 acres in the City of Trenton; that defendant paid the sum of $1650 for the property last described and falsely and fraudulently caused it to be recited in the deed by which he purchased it, which deed was recorded in the office of the Recorder of

Deeds of Grundy county, that the consideration was the sum of $2250; that after the purchase of the last-described property by the defendant, he entered into negotiations with plaintiffs—

"for an exchange of the said properties. Plaintiffs state that they were ignorant of the amount which the defendant had paid for his property; that the defendant intending to deceive the plaintiffs and to induce them to enter into the contract, falsely and fraudulently and for the purpose of defrauding and deceiving the plaintiffs, knowingly and intentionally concealed from the plaintiffs the fact that he had paid less than $2250 for his property, and at that time well knowing that had the plaintiffs known how much the defendant had actually paid, plaintiffs would not have entered into the exchange agreement, and that the defendant, W. A. Clem, for the purpose of inducing the plaintiffs to make the exchange, falsely and fraudulently represented to the plaintiffs that he had paid therefor the sum of $2250 and that this represented the cost price of the property to him and was the reasonable value of the property, and that he was still willing to carry out the oral agreement to let them have the property at its cost price, and, that in letting them have the property at $2250 that he was in fact carrying out his oral agreement and that this was the cost price. Plaintiffs further state that at that time the defendant knew that this representation was false and that the recital in the deed as above referred to, was false and were all made and done for the purpose of defrauding the plaintiffs and in inducing them to enter into the exchange agreement."

The petition then alleges that prior to these negotiations defendant by manifesting acts of kindness and good will in various transactions with plaintiffs, had ingratiated himself into their confidence and that by reason thereof they reposed special confidence in the defendant—

"and relied on his representations concerning the cost price of the property and failed to make a thorough and complete investigation as to the truth of the representation concerning said cost price and by reason of such reliance plaintiffs were induced to and did exchange properties with the defendant.

"Plaintiffs further state that the representations of the defendant that he was and had carried out his oral promise to the plaintiffs in trading them this land, at the price he paid for it, and that the price he paid was $2250, and that the value was $2250 were each and every one of them false, and known to be false by the defendant at the time that they were made, or were made by the defendant without any knowledge of their truth or falsity, and with a reckless disregard to the truth of the same; that the property traded to plaintiffs was not of the value of $1650; that this was the price actually paid for it by the defendant and that the defendant had not carried out his oral promise."

The petition asks for $600 actual and $5000 punitive damages.

Defendant's answer denied "each and every allegation" contained in the petition "except such as are hereinafter admitted to be true." The answer then states:

"Defendant further answering states, that during the month of May, 1920, and while he was the owner of a house and lot containing about three acres, in the north part of the City of Trenton, plaintiffs were the owners of a property on Fourteenth street in said city, and were anxious to exchange their property for the defendant's property as they were in need of more ground on the outskirts of the city, for themselves and the livestock which they were then keeping. Thereupon, they entered into negotiations which culminated in the exchange of properties, but said deal was not closed, however, until plaintiffs had fully examined and inspected defendant's property.

"Thereafter plaintiffs raised the value of their property on Fourteenth street several different times, finally raising the same from $2250 to $3050, a sum greatly in excess of its real value, there being a mortgage upon plaintiffs' property, past due, of about $1700 leaving plaintiffs' equity in said property at the price agreed $1350 and at the same time agreed to take defendant's property at $2250, the same being clear of incumbrance.

"Defendant says that instead of plaintiffs' reposing any special confidence in defendant, they were thoroughly familiar with said property and the value thereof, in fact knew the same better than the defendant knew it, and they were ready, willing and anxious to make the exchange of properties by giving the necessary mortgage which would equalize the equities in their property with the value of the defendant's property. That said trade and exchange of properties was afterward consummated and that plaintiffs have sustained no damage thereby."

The answer further states that plaintiffs did not make any claim that they had been defrauded "for years thereafter" and until they had made default in "every provision" of a deed of trust given by them to defendant on the property he traded them. It seems to be admitted that a reply was filed consisting of a general denial.

There was evidence tending to support all the allegations of the petition with the exception that there was no evidence introduced by plaintiffs tending to prove that defendant had not paid the sum of $2250 for the property he traded to plaintiffs as alleged in the petition. Plaintiffs' evidence also showed that they were acquainted with the property purchased of the defendant and at the time inspected the same. There was no evidence to show any fiduciary relation existing between the parties although there was some evidence that defendant did certain acts of kindness for plaintiffs and their children.

It is admitted that it must appear that defendant had not paid the sum of $2250 for the property purchased by him to be exchanged for plaintiffs' property. While there is no testimony to that effect, plaintiffs insist that that fact is admitted by the pleadings. We think that this contention is well taken. The allegations in the answer that defendant denied each and every allegation contained in plaintiffs' petition "except such as are hereinafter admitted to be true" is faulty and cannot be considered as a general denial and, consequently, the answer cannot be taken as denying any of the matters in plaintiffs' petition except those expressly denied. [Sec. 1232, R. S. 1919.] And there is no express denial in the answer of the fact in controversy. A qualified general denial of this nature has been characterized as a "vicious method of pleading." [Long v. Long, 79 Mo. 644, 650; Snyder v. Free, 114 Mo. 360, 367; Young v. Schofield, 132 Mo. 650, 662.] This character of answer is criticised because it does not clearly and unequivocally deny the existence of one or more of the facts essential to the cause of action and it requires the plaintiff and the court to resort to an analysis of the pleading to ascertain what is denied and what is admitted. [Cooper v. Ins. Co., 139 Mo. App. 570, 581.]

"It was never the design of the code that a party plaintiff should have to carefully sift each denial of the answer and to carefully compare it with each paragraph of the petition in order to see what is admitted and what is denied. Such denials may be general or they may be special, but in either event the issue must be sharply defined, and not left to surmise or conjecture. And notwithstanding a party plaintiff may move to have the pleading of his adversary made more definite and certain, yet he is not bound to do this; that is the primary duty of the party drawing the pleading, and the latter cannot cast that *onus* on his opponent by failing to perform his own duty in the first instance, and that duty consists in expressing his meaning clearly and unmistakably. The same view is taken on this point in New York, from whence our code is derived." [Snyder v. Free, supra, l. c. 367, 368.] [See, also, Dezell v. Fidelity & Casualty Co., 176 Mo. 253; Pace v. Ins. Co., 173 Mo. App. 485; Brickell v. Williams, 180 Mo. App. 572; Ritchey v. Home Ins. Co., 98 Mo. App. 115; Hope Lumber Co. v. Stewart, 241 S. W. 675.]

In Atterbury & Nichols v. Hopkins & Schrenk, 122 Mo. App. 172, 176, this court said:

"A denial may be a general denial, but as a general denial, it cannot be qualified by unspecific exceptions which leave the opposite party the burden and the risk of finding out what the exceptions are."

The cases of McDonald v. Benton Hotel Co., 247 S. W. 228 and Flowers v. Smith, 214 Mo. 98, are not in point. In the former case the defendant set up four counterclaims but the only part of the answer

which went to defeat the claim of plaintiff was the statement that each and every allegation of plaintiff's petition were denied except as thereinafter specifically admitted. The court held this denial in the answer to be a good general denial but the answer in that case consisted of nothing going to defeat plaintiff's claim except the part that we have mentioned. It did not require the plaintiff to carefully examine each denial of the answer in order to see what was admitted and what was denied, for the reason that nothing but the qualified general denial appeared in the answer to be examined. The latter case is exceptional. The qualified general denial therein was given the effect of a general denial because this was all there was to the answer except one simple admission made therein. The court recognized the general rule but contented itself by saying, in effect, that the facts were different. It will be readily seen that the Flowers case is not in point.

Defendant insists that the answer should have been attacked in the trial court and that it is too late now to urge the point made by the plaintiffs. There is no merit in this contention.

"The provisions of our Code of Civil Procedure in regard to the liberal construction of pleadings, section 2074, Revised Statutes 1889, and as to what an answer shall contain, section 2049, Ib., are substantially identical with sections 519 and 500, Wait's New York Code Civil Procedure, 1877. And it has been ruled in that State that section 519 in relation to liberal construction of pleadings with the view to substantial justice between the parties, extends only to '*matter of form*' and does not 'apply to the fundamental requirements' of a good pleading, RUGER, C. J., remarking: 'A construction of doubtful or uncertain allegations in a pleading, which enables a party by thus pleading to throw upon his adversary the hazard of correctly interpreting their meaning, is no more allowable now than formerly; and when a pleading is susceptible of two meanings, that shall be taken which is most unfavorable to the pleader. [Bates v. Rosekrans, 23 How. Pr. 98.] It is in the nature of things that a party who is required to frame his issues for the information of his adversary and the court, must be responsible for any failure to express his meaning clearly and unmistakably. While it is competent for a party to move to make the pleadings of his adversary more definite and certain yet, inasmuch as it is the primary duty of the party pleading to present a clear and unequivocal statement of his allegations, the *onus* of having them made so cannot be cast upon his adversary by his own fault in failing to perform his duty.' [Clark v. Dillon, 97 N. Y. 370.]" [Young v. Schofield, supra, l. c. 661, 662.]

The same is held in Snyder v. Free, supra. The answer herein is wholly defective. Most of the qualified general denials that we have examined state that everything is denied except that which is "*ex-*

*pressly"* admitted. The answer in this case merely says that everything is denied except that which is admitted, evidently intending to cover all admissions whether expressly made or made by implication. The remainder of the answer contains no express admissions but impliedly admits that a trade was made but with different surrounding facts than those mentioned in ·the petition, and then, in an indirect manner, denied the relationship of confidence sought to be pleaded in the petition and attempts to plead new matter. This answer is subjected to the criticism that it placed an onerous duty upon the court and opposing counsel of sifting out the answer to find out what is admitted and what is denied in a far greater degree than any answer we have examined in the books in connection with this case. Only after the answer is examined and studied carefully can we determine what was intended to be admitted, and even then it is subjected to be looked upon in a different light. The fact that the admissions actually made are not specifically denominated as such, makes the burden much greater.

From what we have said there was no denial in the answer that defendant paid less than $2250 for the property and consequently this fact stands admitted. [Secs. 1232, 1256, R. S. 1919; Stoff v. Schuetze, 240 S. W: 139; Rooney v. Yellow Cab & Baggage Co., 269 S. W. 669, 672.]

There is no question but that the petition states a cause of action for· compensatory damages even though there was no fiduciary relationship shown. [26 C. J. 1227, note 94; Fisher v. Seitz, 172 Mo. App. 162; Pickett v. Wren, 174 S. W. 156, 159; Kohl v. Taylor, 35 L. R. A. 174 (Wash.); Wine v. United States, 260 Fed. 911; 26 C. J., p. 1226; Hardwood Lumber Co. v. Dent, 121 Mo. App. 108.] And this is true even though plaintiffs' evidence shows that they were acquainted with the property purchased of the defendant and at the time of the trade they inspected it. [Laird v. Keithley, 201 S. W. 1138, 1142.]

As before stated, there was evidence to support all the allegations of the petition except as to fiduciary relationship between the parties and it was not proved that the defendant did not pay the sum of $2250 for the property ·he traded to plaintiffs. This latter, at least, is admitted in the pleadings. A reading of the petition shows that it substantially charges that plaintiffs were ignorant of the cost of the property and relying upon the representations made by the defendant, did not make a complete investigation as to the representations made by the defendant as to such cost. In addition to making the representations alleged, the defendant, in order to mislead and render discovery of the true consideration more difficult, caused the deed to recite that the consideration was $2250 when it actually cost him $1650. [See 26 C. J. 1071, 1218.]

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.