O. C. PRINCE, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, a Corporation, Appellant, No. 41512—229 S. W. (2d) 568.

Division One, April 10, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, May 8, 1950.

*Cyrus Crane, Winston H. Woodson* and *James F. Walsh* for appellant.

582

*F. M. Kennard, A. C. Popham, David Trusty* and *Sam Mandell* for respondent; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

ASCHEMEYER, C.—This is an action under the Federal Employers' Liability Act (45 U. S. C. A. Sec. 51, et seq.) to recover damages for personal injuries. The answer pleaded a release executed by respondent. The reply raised an issue of fraud in the procure-

ment of the release and prayed that it be set aside. Respondent recovered a judgment for $44,400.00 from which this appeal has been taken.

Aside from the release, which appellant asserts precluded recovery, appellant does not question the sufficiency of the evidence to make a submissible case upon the allegations of the petition. Respondent, a Negro, was employed by appellant as a blacksmith's helper in its shops in Shreveport, Louisiana. He was injured there on June 16, 1944, while assisting in carrying a channel iron. The iron weighed about 600 pounds; was 10 or 12 feet long; was about 1 foot wide; and was approximately 1½ inches in thickness. He was assisting two other men in carrying the iron. He was at the rear end alone, and the other two men (Mitchell and Franklin) were on the front end. It slipped out of Mitchell's hands. Franklin could not hold it and the front end fell to the floor. The rear end hit respondent between the heart and the navel, and a corner of the iron hit him on the left side and groin. The iron "snatched" him down and carried him "down in a twist." His right hand was caught under the iron. Other facts will be stated in the course of the opinion.

It is admitted that, for a consideration of $600.00, respondent executed a release on December 4, 1944, in the claim office of appellant at Shreveport, Louisiana. Respondent contends that the release was invalid and was properly set aside by the jury's verdict, because he was induced to execute the release by his reliance upon certain misrepresentations concerning his physical condition made by Dr. Walter P. Miller, Chief Surgeon of the Kansas City Southern Employees' Hospital Association, who was also a surgeon and representative of appellant, and by his reliance upon misrepresentations made to him by the claim agent, C. H. Mitchell, at the time the release was executed.

The respondent's evidence upon these issues was as follows: He was a patient in Wheatley Hospital in Kansas City, Missouri, from September 29 to October 29, 1944. On October 9, 1944, Dr. Miller operated on him to repair a hernia he had sustained in the accident. During his residence in the hospital, he had pain in his left side, in his chest and back, and felt coldness in his right side. He had been spitting up and passing blood. Practically every time he saw Dr. Miller, both before and after the operation, he mentioned these things to him. About the time he was ready to leave the hospital, he told Dr. Miller again about the pain in his chest and back, the coldness in his side and chest, and about passing blood. Dr. Miller told him, "it was just a natural symptom from the operation. He said I was in great shape." Dr. Miller told him to go to the claim agent and make a settlement. He said, "You have no injury or condition that could cause you from performing the duties you have performed before you were hurt." Dr. Miller told him he had no

permanent injury; that he was strong; that he could return to work on December 1, 1944; and that "He could lift a corner of a building." Respondent told the doctor he did not think he could return to work on December 1, 1944, unless he felt better.

Two witnesses who occupied adjoining beds in Wheatley Hospital· testified that they heard respondent complain to Dr. Miller about pain in his side and chest. One of these witnesses stated that Dr. Miller told ˙respondent there was nothing wrong. "It was part of the operation and he would be all right." The other testified: "The doctor told him to go right back to work, the first of December to go back to work, do whatever they wanted him to do, if they asked him to lift the side of the building 'you could lift the side of the building.' " He also stated that Dr. Miller told respondent he had a cold in his chest.

On December 4, 1944, respondent saw the claim agent, C. H. Mitchell, in Shreveport. He related to the claim agent what Dr. Miller had told him about his physical condition. Mitchell said he had discussed respondent's case with Dr. Miller and stated, "whatever Dr. Miller told me I could rely on, he would never tell me wrong." On cross-examination respondent testified that Mitchell said, concerning Dr. Miller: "He said he was a reliable, good doctor, he said whatever Dr. Miller tells you you can rely on." After some negotiations, they agreed on $600.00 in settlement; respondent signed a release and received a check or draft. Respondent did not read the release but Mitchell volunteered to read it to him. In doing so, he failed to read that portion of the release which recited: "In making this settlement and release, I am using my own judgment and am not relying upon any statement or representation made by any agent, employee or physician of said Railway Company or other companies." At the dictation of the claim agent, respondent wrote on the bottom of the release, "I understand ·that I am settling my claim against the K. C. S. Ry. Co."

We quote some of respondent's testimony concerning his reliance upon the representations made to him:

"Q. Now, at the time he (Dr. Miller) told you that this coldness in the chest and side was only a temporary symptom of your operation you were still at the Wheatley? A. Yes, sir, still at the Wheatley. Q. All right. Did you believe that, rely on what he said? A. Yes, sir, I believed him. Q. When Dr. Miller kept telling you to go to the claim agent what conversation did you have with him as to whether or not you would be able to do your work afterward? A. Well, after he told me to go to the claim agent and make a settlement I asked him what he thought about my condition? Q. What did he say? A. He told me, 'You have no injury or condition that could cause you from performing the duties you have performed

586

before you were hurt.' Q. Did you rely on that? A. I relied on that. Q. Did you believe what he told you? A. I believed him.

"Q. Now, O. C., I want you to tell these folks whether or not at the time you made this settlement you were relying solely upon the representations and statements of the claim agent and Dr. Miller? A. I was. Q. Were you relying upon any other doctor or opinion of any other doctor? A. No, sir, I wasn't. Q. Except for going to these other doctors for temporary relief had you ever asked any of them to give you an opinion as to the future or as to whether you were permanently injured or had you asked for their opinion at all? A. No, sir, I hadn't. Q. Had they ever given you any opinion? A. No. Q. You tell this jury you were not relying on any other doctor but relying solely on Dr. Miller? A. Dr. Miller and the claim agent. Q. But for the representations would you have signed this release? If they hadn't made those representations to you would you have signed this release? A. No, sir.

"Q. You knew those three pains were not symptoms of the operation? A. It got worse after I was operated on. Q. You had them before the operation, too? A. I had pain, yes, sir. Q. You knew they were not entirely from the operation? A. Caused from the accident, at the beginning, yes, sir. Q. Started from the accident? A. Yes. Q. You knew that you had those pains before you ever came to Kansas City? A. Yes, sir. Q. And you knew you had those pains before the operation? You knew they were not a symptom of the operation? A. I knew the accident was the cause of the pain starting but I had never been operated on and the doctor told me after he operated on me I was in good shape. He said those pains and things were symptoms from the operation, I was in good shape. Q. You knew better than that? A. I didn't know that.''

The appellant's testimony is in sharp conflict with respondent's evidence. Dr. Miller denied making the statements attributed to him and testified that respondent did not complain of his chest and back while in the hospital. Other evidence corroborates his testimony that no such complaints were made. Mitchell, the claim agent, not only denied making the statements attributed to him, but testified that the settlement was negotiated by Sam P. Burford. Burford corroborates Mitchell's testimony.

Appellant argues that respondent failed to make a submissible case on the fraudulent procurement of the release because: (1) the evidence shows, as a matter of law, that respondent did not believe or rely upon the statements of Dr. Miller and the claim agent, and (2) the statements of Dr. Miller and the claim agent were expressions of opinion and not statements of fact.

Was there substantial evidence of respondent's belief in and reliance upon the statements made? Appellant argues that since respond-

ent testified repeatedly that he had pain in his side, chest, and back from the time of his injury and through the time he executed the release on December 4, 1944, he could not have believed Dr. Miller's statements that the pain was a natural symptom of the hernia operation. Appellant points out that respondent was examined and treated by other doctors prior to December 4, 1944, including a Dr. DeLee, who was his own choice, and that more than a month elapsed from the time respondent last talked to Dr. Miller and the day when he settled his case. When this case was before the Court on an earlier appeal (Prince v. Kansas City Southern Ry. Co., 214 S. W. (2d) 707, 710), we conceded that the case was close and that "a serious question remains as to whether he made a submissible case for avoidance of the release." We are still of the opinion that "This case is a close one and the evidence is in sharp conflict." However, we cannot say, as a matter of law, that respondent did not believe or rely upon the statements of Dr. Miller and the claim agent. Dr. Miller had performed an operation upon him. The relationship of physician and patient existed between them. We cannot say that respondent was not justified in the belief that Dr. Miller thoroughly understood his case, even though the pains of which he complained dated from the accident and preceded the operation. He testified that the pain in his chest and back became worse after the operation. While the evidence shows that respondent was treated by various other doctors, including Dr. DeLee, there is no evidence that he consulted any other doctor between the time he last talked to Dr. Miller and the day when the release was executed.

Respondent was a man of little education who had had no prior experience with surgical operations. He was hardly on an equal footing in his relationship with Dr. Miller, and it is to be expected that he would repose confidence in his doctor who possessed special learning and skill. Wingfield v. Wabash R. Co., 257 Mo. 347, 365, 166 S. W. 1037. It has been held that where the relationship of physician and patient exists it is not necessary to show that the patient "had unquestionable belief in the infallibility of the judgment of the physician" in order to show that the patient relied upon statements made by the physician concerning his physical condition. Viallet v. Consolidated Ry. & Power Co., 30 Utah 260, 84 P. 496, 499.

The cases relied upon by appellant do not sustain its position. In Ensler v. Missouri Pac. R. Co., 324 Mo. 530, 23 S. W. (2d) 1034, the question as to whether plaintiff relied, and had a right to rely, on representations made by a claim agent that a paper was a receipt for wages was for the jury. In Wingfield v. Wabash R. Co., supra, it was held that a doctor's statement that the fractured bones of plaintiff's arm had united was a statement of fact and plaintiff's reliance thereon was for the jury. In Ralston Purina Co. v. Swann,

588

(Mo. App.) 161 S. W. (2d) 39, plaintiff admitted that he did not believe the statement which was the basis of the alleged fraud. In Brown v. Kansas City Southern R. Co., 187 Mo. App. 104, 173 S. W. 73, the Court held that plaintiff's reliance, and her right to rely, upon misrepresentations of defendant's right-of-way agent was for the jury. Ricketts v. Pennsylvania R. Co., 153 F. (2d) 757, obviously has no application since it involved the right of plaintiff to rely upon the representations of his own attorney concerning the nature of a paper which he signed. In Chicago & N. W. Ry. Co. v. Wilcox, 116 Fed. 913, the statements of a physician to plaintiff were a prognosis as to her recovery. It was held that such an opinion as to a future event furnished no basis to set aside a release.

In considering the sufficiency of the evidence to establish respondent's belief in and reliance upon the statements of Dr. Miller and the claim agent, we must consider only the evidence favorable to respondent and the favorable inferences which reasonably may be drawn therefrom. When the evidence is so viewed, we believe it is sufficient to make a submissible case on these issues. Wingfield v. Wabash R. Co., supra; Ensler v. Missouri Pac. R. Co., supra; State ex rel. Missouri Pac. R. Co. v. Trimble, 332 Mo. 962, 59 S. W. (2d) 622; Schubert v. St. Louis Public Service Co., (Mo.) 214 S. W. (2d) 420; St. Louis, I. M. & S. Ry. Co. v. Hambright, 87 Ark. 614, 113 S. W. 803, 807.

■ Appellant's contention that respondent made no submissible case on the avoidance of the release because Dr. Miller's statements were mere expressions of opinion is equally without merit. The doctor's statements were made concerning respondent's existing physical condition. They were not simply expressions concerning the probable future course of his injury. They were statements of fact and have been so regarded by this and other courts. Wingfield v. Wabash R. Co., supra; Macklin v. Fogel Const. Co., 326 Mo. 38, 31 S. W. (2d) 14, 17. See also Scheer v. Rockne Motors Corporation, 68 F. (2d) 942, 945, criticizing Chicago & N. W. Ry. Co. v. Wilcox, supra. We believe that the statements of the claim agent concerning the standing and trustworthiness of Dr. Miller were expressions of opinion rather than statements of fact. Standing alone, they would not justify the avoidance of the release. The evidence concerning the statements of Dr. Miller, if believed by the jury, was sufficient, without more, to justify setting aside the release so that the inclusion of the evidence regarding these statements of the claim agent was not essential and added nothing to respondent's case. Schubert v. St. Louis Public Service Co., (Mo. App.) 206 S. W. (2d) 708, 719, affirmed on certification to this Court, see Schubert v. St. Louis Public Service Co., (Mo.) 214 S. W. (2d) 420, 424; Macklin v. Fogel Const. Co., supra.

Instruction No. 1 submitted the facts regarding the accident and hypothesized several issues of appellant's negligence. Appellant assigns error in the giving of this instruction because it submitted an issue as to the negligence of the appellant in failing to provide a sufficient number of men to carry the channel iron. Appellant argues that there was no evidence to support this submission. The evidence showed these facts: Respondent and two other men were carrying the iron when the accident occurred. It usually took four men to carry an iron of this weight and size. Respondent asked the foreman for another man. He replied, ''See if you can get one.'' Respondent was unable to get ▮ one and so reported to the foreman who instructed the three men to proceed with the work, saying, ''Go ahead, you three fellows can carry it. Do the best you can.'' Respondent and the other two men obeyed the foreman's instruction. This evidence clearly justified the submission of the issue of insufficient help to the jury.

Instruction No. 2 submitted respondent's theory of his right to an avoidance of the release. Appellant argues that the instruction is erroneous in several particulars. First, it is urged, the instruction should have required the jury to find that the misrepresentations of the ''claim agent'' which induced respondent to sign the release were made by C. H. Mitchell since there was a direct conflict in the evidence as to whether the release was negotiated by Mitchell, as respondent stated, or by Sam P. Burford, as appellant's evidence showed. Respondent's evidence supported the representations of the claim agent which were submitted. His evidence was that Mitchell made the statements. Both Mitchell and Burford denied that any such statements were made when the release was negotiated. If the jury believed that the submitted representations were made, it must have necessarily found that Mitchell was the author of them, and it was not essential that the instruction identify him by name. The instruction submitted the misrepresentations of Dr. Miller and the claim agent and required the jury to find that the misrepresentations of both induced respondent to execute the release. As we have already pointed out, the evidence concerning the misrepresentations of Dr. Miller, without more, was sufficient, if believed by the jury, to justify the avoidance of the release and the evidence concerning the statements of the claim agent was not essential to respondent's case. Respondent's inclusion in the instruction of the statements of the claim agent was the assumption of an unnecessary burden which gives appellant no basis for complaint. Schubert v. St. Louis Public Service Co., (Mo. App.) 206 S. W. (2d) 708, 719, affirmed on certification to this Court, see Schubert v. St. Louis Public Service Co., (Mo.) 214 S. W. (2d) 420, 424; Macklin v. Fogel Const. Co., supra.

Secondly, appellant contends that Instruction No. 2 is erroneous because the evidence does not support the required finding that the statements of Dr. Miller and the claim agent were "knowingly untrue and were made in reckless disregard of the facts." What we have said concerning the representations of the claim agent makes unnecessary a discussion of this contention in connection with the evidence relating to the claim agent. As to the representations of Dr. Miller, the respondent's evidence is that he complained repeatedly to Dr. Miller about the pain in his side, chest, and back, and about a sensation of coldness in his chest. Dr. Miller assured him that he was in good shape, that he could go back to work, and that the things of which he complained were natural symptoms of the operation. Of course, Dr. Miller denied emphatically that he made the statements attributed to him or that respondent made the complaints to which he testified. The matters of which respondent complained were not symptoms of the hernia operation. Appellant recognizes that they were not. In our opinion, the evidence justified the required finding that Dr. Miller knew that his statements were untrue and that he made them in reckless disregard of the facts.

Finally, appellant argues that Instruction No. 2 is erroneous because there is no evidence to support the required finding that Dr. Miller was acting as a "representative agent and servant of defendant and was acting in mutual cooperation with its claim department." Appellant says that Dr. Miller was Chief Surgeon of the Kansas City Southern Employees' Hospital Association, an entity separate and distinct from the railroad, and that he was not an agent or employee of the railroad. The evidence on this issue was as follows: Dr. LeDoux, a physician in the Highland Clinic at Shreveport, told respondent he would send him to Dr. Miller in Kansas City for an operation and that Dr. Miller was Chief Surgeon of the railroad. On various occasions when respondent asked Dr. Miller to complete blanks upon which respondent was making a claim against an insurance company, Dr. Miller refused to do so until respondent went back to Shreveport and settled with ▪▪▪ the railroad company. When Dr. Miller gave respondent a note stating he could return to work on December 1, 1944, he instructed respondent to see the claim agent and get settled up so he could return to work. Mrs. Sallie M. Dibble, who was in charge of the records at Wheatley Hospital in Kansas City, stated that her husband had been a surgeon for the Kansas City Southern Railway Company for many years and had worked under Dr. Miller who was Chief Surgeon. Sam P. Burford, formerly claim agent for appellant, stated that he knew Dr. Miller "only as a doctor for the Kansas City Southern Railway Company." Dr. Miller testified that he had been doing work for the railroad company since 1914; that he treated people for the railroad who were not members of the Hospital Association;

in sending respondent to the claim agent he was representing both respondent and the claim agent; that he made oral reports to the claim department concerning respondent's physical condition; he acknowledged that he refused to give permission for respondent or his attorney to see the records of Wheatley Hospital pertaining to respondent until the claim department of the railroad gave its permission; he stated that a practice of cooperation with the claim department had existed for many years; and he arranged for the employment of Dr. Lockwood, who was paid by the railway company, to make an X-ray examination of respondent and to testify in the case. In our opinion, the evidence was amply sufficient to justify a finding that Dr. Miller was acting as the agent and representative of appellant when he was dealing with respondent.

Instruction No. 3 set forth the measure of damages. It allowed the jury to consider, among other things, the future loss of earnings to be sustained by respondent and concluded with the direction "if your verdict be for him it will be the *present cash value* of such amount as a whole stated in one lump sum after crediting defendant with the payment of $600.00." (Emphasis supplied) Appellant asserts that this instruction is erroneous because there is no evidence to aid the jury in determining the present value of future benefits to be allowed respondent. It is argued that mortality or annuity tables, or tables of present value, should have been offered together with evidence as to the present earning power of money. Appellant cites Gulf, C. & S. F. Ry. v. Moser, 275 U. S. 133, 136, 72 L. Ed. 200 and Ches. & Ohio Ry. Co. v. Kelly, 241 U. S. 485, 491, 60 L. Ed. 1117, in support of its position. These cases announce the rule that, in actions under federal statutes, where a recovery is sought for future benefits, only the present cash value of such benefits may be allowed. Instruction No. 3 correctly states this rule and it is in conformity with the instruction which the Court held in Ches. & Ohio Ry. v. Kelly, supra, to have been erroneously refused. In that case, however, the Court carefully refrained from laying down any evidentiary standards by which the jury was to determine present value. This Court has held that standard life and annuity tables "are not the preclusive means of arriving at a fair and just estimate of the present value of anticipated earnings." Pulliam v. Wheelock, 319 Mo. 139, 3 S. W. (2d) 374, 378; Gill v. Baltimore & O. R. Co., 302 Mo. 317, 259 S. W. 93, 97. The point is without merit and is ruled against appellant.

Finally, we come to appellant's contention that the verdict is excessive. The question as to whether a judgment is so excessive as to require remittitur is usually one of great difficulty. In determining the matter we must, of course, consider only the evidence favorable to respondent. Respondent was 37 years of age at the time of his injury on June 16, 1944, and was 42 years old at the

time of the second trial. He was strong and healthy before the accident and had done heavy manual work. Although appellant asserts that the record on the first appeal of this case showed that respondent earned about $175.00 per month on the basis of a seven day week, the only evidence in this record as to respondent's earnings is his testimony that he averaged $250.00 per month. While respondent has never been able to resume his former occupation, ▮▮▮ he worked for about one month in 1947 as a general handy man for a candy company and worked as a porter at a bus depot in Shreveport from November 1947 until June 1948. On the latter job he handled baggage but said he was able to work only about two-thirds of the time. This employment terminated when he injured his back. He was paid Workmen's Compensation for this injury.

He sustained a hernia on the left side which was repaired surgically in October 1944. The knuckle of his right index finger was injured and there is evidence that the joint is thickened and somewhat stiff so that there is a permanent, partial limitation in the use of his right hand. He testified that he has suffered pain since the injury in his left side, back, and right chest. He complains of weakness in his back, shortness of breath, a fluttering of his heart and occasional "blackouts." Beginning in February 1945, he was in the Highland Clinic in Shreveport for three months suffering with pleural effusion. His chest was tapped four times and large quantities of fluid were drawn out.

Ten physicians testified. There was evidence that respondent has a limitation in the use and gripping power of the right hand which is permanent; that the situs of the operation is tender, with some nerve involvement; that his back is painful and weak; and that these conditions are permanent.

The most serious condition with which respondent suffers is a thickening of the pleura around the right lung, with scar tissue formation and adhesions, which has obliterated the lower part of the lung, reduced the lung to about 50% of its normal size and pulled the heart from its normal position about 1½ inches to the right. While the evidence conflicts as to whether the displacement of the heart has caused any disability, there is testimony that it has produced a "kinking" of the blood vessels to the heart with interference to circulation, and that this condition could account for the "blackouts" of which respondent complained. There is also evidence that the right side of respondent's chest is pulled inward and that a cavity has resulted.

The conditions in respondent's chest are the result of the pleural effusion which was first diagnosed in February 1945. The evidence creates a doubt as to whether respondent's pleurisy and resulting pleural effusion existed prior to February 1945, but there is medical evidence that it resulted from the injury suffered by respondent on

June 16, 1944. There is no question that the condition of respondent's chest, lung, and heart is permanent and, in fact, that it may become progressively worse, as was indicated by a comparison of X-rays taken in preparation for the two trials.

The condition of respondent's chest and right lung is permanently incapacitating, and he will be unable to do any type of work that demands heavy physical exertion. On the other hand, he is able to get about and, apparently, will be able to do light work which does not require much physical strength.

We have examined many cases upon the question of excessiveness, including all of those cited in the briefs. It is our opinion that the judgment of $44,400.00 is excessive. We are reminded by respondent that we are to take into consideration the reduced purchasing power of money. Each case must be considered upon its own facts having due regard to a reasonable uniformity of awards in personal injury cases. Van Campen v. St. Louis-San Francisco Ry. Co., (Mo. Sup.) 216 S. W. (2d) 443, 449; Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S. W. (2d) 568, 577, 161 A. L. R. 383.

Considering all of the facts and circumstances in this case in relation to those previously decided, it is our opinion that the judgment in respondent's favor should be reduced to $27,500.00. Tatum v. Gulf, M. & O. R. Co., (Mo. Sup.) 223 S. W. (2d) 418; Van Campen v. St. Louis-San Francisco Ry. Co., supra; Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S. W. (2d) 1049; O'Brien v. Louisville and Nashville Railroad Company, 360 Mo. 229, 227 S. W. (2d) 690. If, therefore, respondent will within fifteen days enter a remittitur in the sum of $16,900.00, the judgment will be affirmed for $27,500.00 as of the date of the verdict. Otherwise, the judgment will be reversed and the cause remanded. *Van Osdol* and *Lozier, CC.,* concur.

PER CURIAM:—The foregoing opinion by ASCHEMEYER, C., is adopted as the opinion of the court. All the judges concur.