257 S.W.2d 84 (1953)
PIERCE
v.
NEW YORK CENT. R. CO.
No. 43312.
Supreme Court of Missouri, Division No. 1.
April 13, 1953.
*85 Wilton D. Chapman, St. Louis, for defendant-appellant.
Miller & Landau, St. Louis, for respondent.
DALTON, Judge.
Action for damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. for personal injuries sustained. Verdict and judgment were for plaintiff in the sum of $35,000. Defendant has appealed.
Defendant is a common carrier of freight and passengers for hire by railroad in interstate commerce. Plaintiff was employed as a trucker at defendant's freight depot on Front Street in East St. Louis, Illinois. His duties consisted of loading and unloading freight and to do this work he was furnished a two-wheel hand truck and a three-wheel motor driven vehicle called a "chore boy." On April 30, 1951, plaintiff with others was engaged in unloading freight from a box car parked on track "C", located adjacent to defendant's depot platform. The edge of the car was some eight inches to a foot from the edge of the platform. A sheet of steel, referred to as a "bridge", extended across the space between the car and the platform for the width of the freight car door.
Shortly after the work of unloading the particular car had started, and while plaintiff was standing in the doorway of the car with one foot inside the car and the other on the "bridge", some other freight cars were "kicked" or shunted in upon track "C". These cars collided with the car, which was being unloaded at the depot platform, and moved it down some six to eight car lengths. Plaintiff was thrown from the car door, but his right leg went underneath the platform and the car, and he was dragged by his right leg for about twenty feet down the platform and sustained injuries to his leg and back.
Plaintiff's evidence tended to show an established custom to notify the workmen engaged in unloading cars of any proposed switching movement on the track where they were working, so that they could get out of the cars and remove the "bridges", but in this case no notice was given. The *86 cause was submitted solely on negligence in failing to warn of the movement of the cars in question. Other facts will be stated in the course of the opinion.
Appellant assigns error on the refusal of its request for a directed verdict, on the limitation of cross-examination of plaintiff, on the admission of certain evidence, on the giving of four instructions and on an alleged excessive verdict.
In support of its assignment that the court erred in refusing to direct a verdict for defendant, it is contended (1) that "there was no evidence that at the time of his injury plaintiff was working on a shipment involved in interstate commerce"; and (2) that "there was no evidence that the cars which struck the car in which plaintiff was working was caused to do so by defendant."
Plaintiff's first amended petition on which the cause was tried contained an allegation: "(2) That on and prior to the 30th day of April, 1951 * * * plaintiff and defendant were engaged in interstate commerce, and that this action is brought under the provisions of the Federal Employers' Liability Act." This allegation was expressly admitted by defendant's answer. There was a further specific allegation: "(6) That at all the times herein mentioned plaintiff and defendant were engaged in interstate commerce by railroad * * * and that this action is governed and controlled by the provisions of Sec. 51 et seq. Title 45 U.S.C.A." This allegation was not specifically denied. Instead the answer contained this statement: "Defendant * * * denies the averments contained in Paragraph Number 6 not specifically admitted herein." No averment contained in paragraph Numbered 6 was specifically admitted and no averment was specifically denied. This answer, in the form of a qualified general denial, undertook to shift to the court and opposing counsel the burden of determining what was admitted and what was denied. It was insufficient to put the allegation in paragraph 6, as to interstate commerce, in issue. James v. Bailey Reynolds Chandelier Co., 325 Mo. 1054, 30 S.W.2d 118, 125(10-13); Montgomery v. Clem, 221 Mo.App. 486, 282 S.W. 1051, 1052; Lokey v. Rudy-Patrick Seed Co., Mo.App., 285 S.W. 1028, 1032(1-3). Further, early in the trial and during the examination of plaintiff as a witness, counsel for plaintiff started a question with reference to the destination of the freight being moved and then raised a question as to whether interstate commerce was admitted. The court said: "I believe it is so admitted." Defendant made no objection to this construction of its answer by the court and it may not now complain.
As to the second point, the question is whether the evidence was sufficient for the jury to infer and find that "the defendant caused other cars to be switched * * * into and against the car in which plaintiff was working", as submitted in plaintiff's Instruction 1.
The evidence shows that plaintiff was an employee of defendant engaged in his usual and ordinary duties as a trucker unloading and distributing freight from a freight car parked on defendant's track "C" at defendant's freight house on Front Street in East St. Louis, Illinois. There were other tracks designated by letters, such as A, B, D, E, etc. "These tracks cross over and interlock so that trains can run back and forth from one track to another by means of switches." The tracks "run straight back" and "this particular freight house at that end is way out to the end, to itself." "There are other freight houses around there in that radius", but they were blocks away. Defendant had its own tracks up to its own freight house and "the other freight houses' tracks don't run there." "The New York Central was the only one that run into the freight house" where plaintiff was working. "Where cars are moved about such as this group of cars was moved into the car upon which Pierce was working * * * the New York Central engine handles them." The Terminal would not have handled a movement of that kind. A witness for plaintiff, after testifying that he was employed by the New York Central on April 30, 1951 and was working with plaintiff in the same car, on track "C" testified: "Well, they kicked in a couple of cars on us * * * naturally, the cars come down the lead and on C track and hit *87 that car * * * and knocked it on down the platform. There was another car below them, the two coupled up and rolled on down the track." (Italics ours.) With reference to the custom and practice on the part of the New York Central Railroad to warn of any intent to move a car that was being unloaded, the witness said: "They usually come down and notify us to get the bridges out and get ready when they are going to shove any. * * * Our foreman usually notifies us." No objection was raised to the use of the word "they" in any of this testimony, which could be construed as a reference to defendant.
While there was no direct evidence that one of defendant's locomotives in charge of defendant's agents was responsible for the switching movement in question, there was evidence from which such an inference could be drawn and there was no evidence that the movement was not one for which defendant was responsible. Appellant relies upon the rule that, if the injury might have resulted from more than one cause for one of which the defendant is liable and for the other defendant is not liable, it is necessary for the plaintiff to prove the injury arose from a cause for which defendant is liable. Goransson v. Riter-Conley Mfg. Co., 186 Mo. 300, 85 S.W. 338, 340. Appellant says that, "if there was negligent moving of cars or engines, it could have been by some other railroad in the area or some other agency" and the court and jury could not speculate that defendant was responsible. We think the facts and circumstances in evidence were such that an inference could properly be drawn that the switching movement in question was caused by defendant. Wills v. Berberich's Delivery Co., 345 Mo. 616, 134 S.W.2d 125, 131; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 97; Winters v. Terminal R. Ass'n of St. Louis, Mo.Sup., 252 S.W.2d 380, 386.
Plaintiff was married to his present wife on May 6, 1946. He was injured on April 30, 1951 and, at the time of the trial, April 30, 1952, he testified that, as a result of injuries sustained, he sometimes suffers with dizziness and pains in his head; and that when the pain hits in his head, "it seems nervousness, dizziness like" and his hands "will be shaking like, and nervous." After this testimony, defendant's counsel sought to question plaintiff as to whether he had ever been married before. Counsel insisted that he had the right to cross-examine plaintiff and to find out about his previous home environment because "a great many things can cause nervousness besides trauma." Counsel offered to prove a prior marriage and he said he could after that inquire into plaintiff's home environment and marital life on the theory that such was vital in view of plaintiff's claim for damages for an alleged nervous condition and other disability. The trial court did not abuse its discretion in so limiting the cross-examination of plaintiff and refusing to permit the inquiry. While there was medical evidence that home environment could cause nervousness, there was no evidence that any home environment, as it existed during a marriage existing prior to May 6, 1946, could have produced any of the conditions of which plaintiff complained subsequent to April 30, 1951. The prior marriage was collateral and immaterial. Bush v. Kansas City Public Serv. Co., 350 Mo. 876, 169 S.W.2d 331, 333; Hancock v. Blackwell, 139 Mo. 440, 455, 41 S.W. 205; Dick & Bros. Quincy Brewery Co. v. Ellison, 287 Mo. 139, 229 S.W. 1059, 1063. Further, the extent to which cross-examination may be carried as to such matters is largely within the discretion of the trial court. Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 649, 157 A.L.R. 598.
Appellant contends "the court erred in admitting the American Experience Tables in evidence to prove `present value' of future earnings." The record upon which this assignment is based shows that plaintiff called one Carroll E. Nelson, a consulting actuary, as a witness and, after an extended preliminary examination concerning mortality tables to which examination no objection was made, counsel asked the witness to refer to the American Experience Mortality Tables and tell "what the expectancy of life is of a man forty-two years *88 of age." Defendant's counsel objected as follows: "Just a moment. I think I want to object to it, unless he can show that a man in a similar situation to the plaintiff in this lawsuitI might interrogate him. The Court: I will overrule that objection." The witness then answered: "On the American Experience Table at age fortytwo the life expectancy is 26.72 years." No further objection was made or relief asked.
Appellant now contends that the American Experience Tables are based upon selected and healthy lives and naturally show greater expectancies than tables based upon lives taken without selection with respect to health; that the evidence shows these tables have not been in use since 1941; that no effort was made to relate the tables to future earnings or to compute the present value of future earnings based upon past earning and the mortality tables; that "the mortality table figure was offered standing alone, unrelated to other essential factors, as the preclusive means of arriving at a fair estimate of the present value of undisputed earnings"; and that its admission was prejudicial error. None of these objections were presented to or ruled upon by the trial court and they are not open to review in this court. Section 512.160, subd. 1 RSMo 1949, V.A.M.S.; Morton v. St. Louis-S. F. R. Co., 323 Mo. 929, 20 S.W.2d 34, 45; Rockenstein v. Rogers, 326 Mo. 468, 31 S.W.2d 792, 801; Simpson Advertising Serv. Co. v. Manufacturers' & Merchants' Ass'n of St. Louis, 330 Mo. 1049, 51 S.W.2d 1019, 1021; Scott v. Missouri Pac. R. Co., 333 Mo. 374, 62 S.W.2d 834, 839; State ex rel. Randall v. Shain, 341 Mo. 201, 108 S.W.2d 122, 128; Teel v. May Dept. Stores Co., 352 Mo. 127, 176 S.W.2d 440, 446; Williams v. St. Louis Public Serv. Co., Mo.Sup., 253 S.W.2d 97, 104. The objection interposed at the trial has been abandoned. Permanent injuries and disability were shown and the evidence in question was not offered for any specified particular purpose. Further, the cases relied upon do not hold the admission of such evidence to be error. Pulliam v. Wheelock, 319 Mo. 139, 3 S.W.2d 374, 378; Gill v. Baltimore & Ohio R. Co., 302 Mo. 317, 259 S.W. 93, 97; Prince v. Kansas City Southern Ry. Co., 360 Mo. 580, 229 S.W.2d 568, 575. And see Peters v. Kansas City Rys. Co., 204 Mo.App. 197, 224 S.W.2d 25, 28.
Appellant says "the court erred in giving Instructions 1, 2, 3, and 4, offered by plaintiff." The assignment does not comply with Supreme Court Rule 1.08 (a) (3); Meierotto v. Thompson, 356 Mo. 32, 201 S.W.2d 161, 165. In argument appellant says that Instruction 1 is erroneous because (a) it submits a finding that "the defendant caused other cars to be switched", when there was no evidence in the record to sustain such finding, and (b) it states that it is conceded that the parties were engaged in interstate commerce when plaintiff was injured, when such fact was neither conceded nor proven at the trial. Appellant further says that Instruction 2 is erroneous because it refers in general terms to defendant's negligence, as defined in other instructions; that the reference is, therefore, to Instruction 1, which is unsupported by evidence and, accordingly, Instruction 2 "merely reinforces the erroneous conception that the defendant could be guilty of negligence in switching the cars when there is no evidence that defendant had done so." In view of our previous rulings as to the sufficiency of the evidence and the legal effect of the pleadings, the objections to Instructions 1 and 2 are overruled.
Appellant says that Instruction 3 is "erroneous because it attempts to declare the law on burden of proof without defining burden of proof and again unfairly and repetitiously reinforces the erroneous Instruction No. 1. No authorities are cited or other argument made. The instruction advised the jury that "if you find and believe from the greater weight of the credible evidence the facts to be as submitted in Instruction No. 1, then the plaintiff has met and carried the burden of proof required of him under the law and under the instructions herein." Similar instructions have been approved in res ipsa loquitur cases. Davis v. Kansas City Public Serv. Co., 361 Mo. 61, 233 S.W.2d 679, 681; Venditti v. St. Louis Public Serv. Co., 362 Mo. 339, 240 S.W.2d 921, 925; Williams v. St. *89 Louis Public Serv. Co., Mo.Sup., 253 S.W. 2d 97, 102, supra. And also in a specific negligence case. Lanasa v. Downey, Mo. App., 201 S.W.2d 179, 182. And see Bolino v. Illinois Terminal R. Co., 355 Mo. 1236, 200 S.W.2d 352; Rasp v. Baumbach, Mo. Sup., 223 S.W.2d 472, 474; and Warner v. Terminal R. Ass'n of St. Louis, Mo.Sup., 257 S.W.2d 75. Further, defendant asked and obtained Instruction 6, which advised the jury "that the burden is upon the plaintiff to prove by the preponderance of all the evidence in the case, every fact, which, under the instructions of the Court he is required to prove in order to make out his case, * * *." We find no conflict and no error.
Appellant says that Instruction 4, plaintiff's measure of damage instruction, is erroneous because "it does not undertake to limit the jury with respect to the amount of any proven loss of earnings, past, present or future, nor does it limit the jury with respect to the amount of any proven expenses, past, present or future." (Italics ours.) Appellant says the instruction gave the jury a roving commission with reference to these items, unlimited in scope, nature or amount. Appellant further insists that the instruction "clearly tells the jury * * * they may award plaintiff whatever amount of earnings he has lost and is reasonably certain to lose in the future." Appellant contends that only "the present cash value of the future earning of the plaintiff" may be recovered; that no evidence was introduced as to the "present cash value" of such future earning; that the instruction did not limit plaintiff's recovery to the present cash value of such future loss of earning; and that "a measure of damages instruction which uses the wrong test on the largest item of damages is prejudicially erroneous." Appellant cites Prince v. Kansas City Southern R. Co., supra, 229 S.W.2d 568, 575, and certain other cases cited therein.
Instruction 4 advised the jury that "if your verdict be in favor of the plaintiff and against the defendant, then in assessing plaintiff's damages you may allow him such sum or sums as you find and believe from the evidence will fairly and reasonably compensate him for whatever injuries you may find the plaintiff to have sustained on the occasion in question and directly resulting therefrom; and in arriving at the amount of your verdict you may take into consideration whatever earnings you may find the plaintiff to have lost as a direct result of said injuries, if any, * * * whatever earnings you may find that the plaintiff is reasonably certain to lose in the future as a direct result of said injuries, if any; whatever expenses you may find the plaintiff to have necessarily incurred for medical treatment * * * whatever expenses you may find the plaintiff is reasonably certain to incur in the future for the necessary treatment of said injuries, if any * * *." (Italics ours.) The only other instruction on the measure of damages was Instruction 7 given at defendant's request which told the jury that " * * * no tax can be assessed or collected on the amount of your verdict, and in arriving at your verdict you should only consider the elements mentioned by the Court in other instructions in this case." (Italics ours.) Respondent says that the defendant adopted plaintiff's theory in its instruction and that the error, if any, is common to both parties and defendant may not complain. Von Eime v. Fuchs, 320 Mo. 746, 8 S.W.2d 824, 827(14); Bennette v. Hader, 337 Mo. 977, 87 S.W.2d 413, 416 (10), 101 A.L.R. 1190. The rule contended for is applied with discretion and does not apply in all circumstances. Millhouser v. Kansas City Public Serv. Co., 331 Mo. 933, 55 S.W.2d 673, 676; Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co., 285 Mo. 669, 227 S.W. 67, 74(6); Kelly v. Lahey, Mo. App., 232 S.W.2d 177, 180(3, 4). We need not determine the applicability of the rule under the facts of this case, because we find no error in Instruction 4. The instruction limits plaintiff's recovery to "such sum or sums as you find and believe from the evidence will fairly and reasonably compensate him for whatever injuries you may find the plaintiff to have sustained." The enumeration of items which the jury was told "you may take into consideration" were fully supported by evidence. Prince v. Kansas City Southern Ry. Co., supra, 229 *90 S.W. 568, 575. The court in so advising the jury did not err. State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68, 71; Kemper v. Gluck, 327 Mo. 733, 39 S.W. 2d 330, 336. And see Meierotto v. Thompson, supra, 201 S.W.2d 161, 167. The form of the instruction may be contrasted with the instruction in Keehn v. D. R. F. Realty & Inv. Co., 328 Mo. 1031, 43 S.W.2d 416, 417. It is true that the instruction did not go further and tell the jury that the amount which they might allow plaintiff for loss of future earnings was limited to the present cash value of such future earnings as plaintiff might lose. This failure was not misdirection but nondirection. If defendant wanted the jury to be so instructed, a proper instruction should have been tendered. State ex rel. United Rys. Co. v. Reynolds, 257 Mo. 19, 35, 165 S.W. 729; Powell v. Union Pac. R. Co., 255 Mo. 420, 455, 164 S.W. 628; Wolfe v. Kansas City, 334 Mo. 796, 68 S.W.2d 821, 826; Petty v. Kansas City Public Serv. Co., 355 Mo. 824, 198 S.W.2d 684, 687. The assignment is overruled.
Appellant's final assignment of error is that "the verdict and judgment for $35,000 is so grossly excessive as to establish misconduct, passion and prejudice on the part of the jury against defendant." The motion for a new trial, however, contains no such an assignment and the matter is not before us for review. The assignments in the motion are that "the verdict is excessive" and "the verdict of the jury is the result of passion, prejudice and bias in favor of plaintiff and against defendant, created by the series of cumulative errors collectively set forth in this motion and not the result of a fair and impartial trial on the issues made by the pleadings." Appellant does not assign error on an excessive verdict, either as an assignment of error or under points and authorities, but in argument says, "at the very least, a substantial remittitur should be ordered by this court." Such an assignment is insufficient to comply with Supreme Court Rule 1.08(a)(3). However, we do not consider the verdict excessive.
In determining the issue of an excessive verdict, we do not weigh the evidence but consider only the evidence and inferences most favorable to the plaintiff and to the jury's verdict which has had the approval of the trial court. It is apparent that the jury believed and accepted as true the evidence favorable to plaintiff and, accordingly, only such evidence will be reviewed.
At the time plaintiff was injured, he was 42 years of age and had an expectancy of 26.72 years. He had been an employee of defendant for 21 years and his pay was $11.33 per day, but an increase had been granted to $12.31 per day. Prior to April 30, 1951, plaintiff had never sustained any serious injury of any nature to his back, body or legs. He had never suffered with arthritis or rheumatism. As stated, on the occasion in question, the impact of the "kicked" cars against the car where plaintiff was working threw him from the car door, his right leg went underneath the platform and the car, and he was dragged down the platform 20 feet by his right leg, flat on his back. When his leg was released, he was left lying on the platform in a jarred, dazed and groggy condition and suffering pain in his right leg. He was not unconscious. There were two cuts about two inches long on the right side of the calf of his right leg and two holes about one inch long between the ankle and the knee on the right leg, one in front and the other in back. Both elbows were bruised. Plaintiff was promptly taken to the general foreman's office and then taken by ambulance to St. Mary's Hospital, where his superficial wounds were dressed by defendant's physician and he was directed to go back to work. He did not resume work, but was taken to his home. When he reached his home, he was "all aches and pains", hurting from head to foot, and in the lower part of his back. The most severe pain was in the lower part of his back and he was having difficulty in walking. This condition continued. On May 2, 1951, he was returned by ambulance to the hospital for observation and he was placed on a hard bed. On May 5, although plaintiff complained that he was hurting from his head to his ankles and was unable to work, he was discharged from the hospital by defendant's physician *91 and told to go back to work as "there was nothing wrong." On May 7, his back was hurting so bad that he was unable to get up and walk. On that date he called in a general physician and surgeon and he was subsequently examined by others including orthopedists and neurologists, and X-rays were taken.
Plaintiff's medical evidence tended to show that, aside from the minor cuts and bruises which healed within a month or so, the pain in plaintiff's lower back was caused by pressure on the nerve roots that came out from the spinal cord. On May 7, 1951, Dr. Arthur M. Jackson diagnosed plaintiff's condition as due to a lumbosacral sprain and a ruptured nucleus pulposus. Plaintiff's condition did not improve and on June 22, a neurologist, Dr. James F. McFadden, was called in consultation and the conclusion was reached from specified positive neurological findings that there was evidence of pathological structural changes within the brain and spinal cord such as result from the herniation of an intervertebral disc. On July 21, 1951, a myelographic examination was made of plaintiff's back with the aid of a fluoroscope and an obstruction was noted in the spinal canal between the fourth and fifth lumbar vertebrae. Plaintiff's physician concluded that plaintiff had suffered a bilateral ruptured disc or that a disc had slipped on both sides of the spinal cord so as to obstruct the spinal canal at that point. In his opinion, the presence of such a bilateral defect would cause pressure on both sides on the nerves radiating from the spinal cord and would cause pain and interference with one's normal movements and ability to walk. The myelographic test was said to be the only conclusive test for determining the presence or absence of a herniated disc. There was evidence that the trauma resulting from being thrown from the freight car and dragged on the platform was sufficient to have produced the injuries to plaintiff's back. There was evidence that plaintiff's condition was permanent; that he would never be able to resume his employment as a trucker, with or without surgery; that the structural changes in the brain could not be removed by an operation; and that, since there had been no improvement in the pain, headaches and dizzy spells suffered by plaintiff from the time of his injury to the time of the trial, it was fairly certain the pain would continue until the disc was removed or the pressure relieved. If a laminectomy, or operation for the removal of the protruding portions of the disc, were performed there would be only a fifty-fifty chance of some relief from pain, but one could get worse results than the present condition. The same was said to be true if the joint were fused or stiffened by a bone graft. Dr. William E. Allen, Jr., a physician and surgeon, did not consider it surgically prudent co operate or attempt surgical interference. Dr. Kilian Fritsch, an orthopedic surgeon, on the other hand, considered a laminectomy to be surgically prudent and the only chance for relief of pain. He said three-fourths of the cases turned out fairly well; that there was a fifty-fifty chance of relief from pain; but that unfavorable results had been reported. He said the X-rays clearly showed a block in the spinal canal suggestive of a nucleus pulposus which could indicate pressure on the spinal cord or nerves that radiate from that part of the body. There was evidence that the X-ray pictures taken by Dr. William E. Allen, Jr. showed no evidence of any type of arthritis; and that the X-rays taken by Dr. Bihss showed a narrowing of the fifth interspace between the fifth lumbar vertebrae and the first sacral segment. Plaintiff still has difficulty in bending his back, it aches and pains and there is a limitation of motion of 40% of normality in bending. There is also tenderness over the lumbo sacral joint.
Plaintiff's evidence further shows that he suffers from dizzy spells; that he has severe pains in his head; that he had no such troubles before he was injured; that he has never been free from pain since he was injured, but he gets some relief from medicines; that he has severe pain every day and he gets nervous and his hands and knees shake and his legs get weak; that he always uses crutches to walk, even at home, unless he has something to hold to *92 and support himself; that he has to spend considerable time in bed each day; that, if he makes a sudden or unusual movement, an awkward step or quick turn, a sharp pain hits him in the head and back and down his limbs; that he has not been able to work since he was hurt, or to dress himself or put on his shoes; that there has been no improvement in the condition of his back or in relief from pain; and that he is still under the active treatment of his physicians and takes the medicines prescribed.
Considering the evidence favorable to plaintiff, as we must, we do not find the verdict excessive. Abernathy v. St. Louis-S. F. Ry. Co., Mo.Sup., 237 S.W.2d 161, 164; Cassano v. Atchison, T. & S. F. Ry. Co., Mo.Sup., 247 S.W.2d 786, 790; Hayes v. Wabash R. Co., 360 Mo. 1223, 233 S.W.2d 12, 17; Pinter v. Gulf, M. & O. R. Co., 362 Mo. 887, 245 S.W.2d 88, 93.
The judgment is affirmed.
All concur.